1 | Richard G. De La Mora (122587), rdelamora@bargerwolen.com
Richard B. Hopkins, II (190108), rhopkins@bargerwolen.com
2 | BARGER & WOLEN LLP
633 West Fifth Street, 47th Floor
3 | Los Angeles, California 90071
Telephone: (213) 680-2800
4 | Facsimile: (213) 614-7399

5

6 | Attorneys for Plaintiff
Global Benefits Group, Inc.

7

8 | **UNITED STATES DISTRICT COURT**

9 | **CENTRAL DISTRICT OF CALIFORNIA**

10 | **SOUTHERN DIVISION**

11

12 | GLOBAL BENEFITS GROUP, INC., a )     CASE NO.:    **CV09-4667 CAS(CTX)**
California corporation,

13 |           Plaintiff,          )     **PLAINTIFF GLOBAL BENEFITS GROUP, INC.'S COMPLAINT FOR:**

14 |         vs.               )     **(1) BREACH OF WRITTEN CONTRACT**

15 | CELINE, ZHANG, PATRICK         )     **(2) BREACH OF ORAL CONTRACT**
HOPKINS, REZA KHADIVI,
16 | SHANGHAI TAI KAI a.k.a. STK and     )     **(3) BREACH OF FIDUCIARY DUTIES**
Does 1 through 10,

17 |                 )     **(4) CONVERSION**
       Defendants.         )     **(5) CONVERSION OF TRADE SECRETS**

18 |                 )     **(6) FRAUD &CONCEALMENT**

19 |                 )     **(7) INTERFERENCE WITH CONTRACT**

20 |                 )     **(8) INTERFERENCE WITH PROSPECTIVE BUSINESS ADVANTAGE**

21 |                 )     **(9) TRADE/SERVICE MARK INFRINGEMENT**

22 |

23 |                 )     **(10) UNFAIR COMPETITION**
                )     **(11) ACCOUNTING & CONSTRUCTIVE TRUST**

24 |                 )     **(12) INJUNCTIVE RELIEF**

25

26 | _____ )

27

28

i:\office\10494\003\09pleadings\complaint v1.doc

PLAINTIFF GLOBAL BENEFITS GROUP, INC.'S COMPLAINT

1    Plaintiff Global Benefits Group, Inc. ("GBG") alleges as follows:

2

3    **PARTIES**

4

5    1.    Plaintiff GBG is, and at all relevant times was, a corporation organized
6    under the laws of the State of Delaware and authorized to conduct business in the
7    State of California. GBG is domiciled and maintains its principal place of business in
8    the City of Foothill Ranch, County of Orange, State of California and is a citizen of
9    the State of California. GBG markets, underwrites and/or services life insurance,
10   accident insurance, short term and long term disability and health insurance products
11   worldwide under names including "Global Benefits Group," "Global Benefits
12   International," "GBG" and "TieCare International." TieCare International is a
13   registered service mark of GBG.

14

15   2.    Defendant Patrick Hopkins ("Hopkins") is a citizen of the United States
16   who at all times relevant has been domiciled in and a full time resident of the city of
17   Shanghai, People's Republic of China or the city of Manila, Philippines. Effective
18   February 24, 2000, GBG entered into a written Sales Representative Agreement with
19   defendant Hopkins (the "Hopkins Agreement"). A true and correct copy of the
20   Hopkins Agreement is attached as Exhibit "A."

21

22   3.    Defendant Celine Zhang ("Zhang") is and at all relevant times was an
23   alien of the United States who is domiciled and a resident of the city of Shanghai,
24   People's Republic of China. GBG is informed and believes, and on that basis alleges,
25   that Zhang is a citizen of the People's Republic of China. Effective January 1, 2004,
26   GBG entered into a written Sales Representative Agreement with defendant Zhang
27   (the "Zhang Agreement"). A true and correct copy of the Zhang Agreement is
28   attached as Exhibit "B."

BARGER & WOLEN LLP
633 W. FIFTH ST.
FORTY-SEVENTH FLOOR
LOS ANGELES, CA 90071
(213) 680-2800

1       4.     Defendant Shanghai Tai Kai, also known as STK ("STK") is a business

2    entity of unknown structure owned and controlled in whole or in part by defendant

3    Zhang solely or in conjunction with an entity known as MSH China Enterprise

4    Services Co., LTD. or, in the alternative, the name under which defendant Zhang

5    conducts business. GBG is informed and believes that STK also does business under

6    the name MSH China. STK is domiciled and maintains its principal place of business

7    in the city of Shanghai, People's Republic of China.

8

9       5.     Defendant Reza Khadivi ("Khadivi") is an alien of the United States

10    who is domiciled in and a resident of the city of London in the United Kingdom.

11    Effective April 1, 2008, Khadivi entered into a Consulting Agreement with GBG (the

12    "Khadivi Agreement"). The Khadivi agreement provides that it is enforceable in the

13    United States. A true and correct copy of the Khadivi Agreement is attached as

14    Exhibit "C."

15

16       6.     The true names and/or identities of those defendants named herein as

17    DOES 1-10 is not known to GBG at this time. GBG will amend this Complaint to

18    state the name and/or identities of each such DOE defendant at such time as the

19    information becomes available.

20

21       7.     GBG alleges on information and belief that each defendant was and is

22    the agent, servant and/or employee of each of the remaining defendants and that, in

23    performing the acts alleged in the Complaint, was acting within the course and scope

24    of such agency and/or employment, in concert with, or with the consent, express or

25    implied, of the remaining defendants.

26

27

28

BARGER & WOLEN LLP
633 W. FIFTH ST.
FORTY-SEVENTH FLOOR
LOS ANGELES, CA 90071
(213) 680-2800

-3-

PLAINTIFF GLOBAL BENEFITS GROUP, INC.'S COMPLAINT

1
2

**SUBJECT MATTER JURISDICTION**

3       8.      Jurisdiction exists pursuant to Article III, §2 of the United States
4   Constitution and 28 U.S.C. §1332 as this action involves a controversy between a
5   citizen of the State of California on the one hand and, on the other hand, a citizen of
6   the United States who is not a resident of or domiciled in California or any other
7   state, and citizens and/or subjects of the foreign states of the United Kingdom and the
8   People's Republic of China.  In addition, the amount in controversy exceeds $75,000,
9   exclusive of interest and costs.  In addition, federal question jurisdiction exists as this
10  matter alleges violation of the trademark laws of the United States. 15 U.S.C. §1051-
11  1127 (hereinafter the "Lanham Act").  Accordingly, this Court has jurisdiction of this
12  action under 28 U.S.C. §§1331, 1338(a), and under the Lanham Act.

13
14

**VENUE**

15
16      9.      Venue in this Court is proper pursuant to 28 U.S.C. §1391(a) as a
17  substantial portion of the acts, omissions, representations and events underlying this
18  action took place in the County of Orange, State of California where GBG is a citizen
19  and maintains its principal place of business.  Venue in this Court is also proper
20  pursuant to 28 U.S.C. §1391(d) as all defendants are aliens of the United States
21  and/or domiciled outside of the United States.

22
23

**FACTS COMMON TO ALL CLAIMS FOR RELIEF**

24
25      10.     By this action GBG seeks damages and injunctive relief based on the
26  fraudulent theft of its Chinese insurance business by defendants, who in various
27  capacities promised and legally obligated themselves to develop and maintain that
28  business for the sole benefit of GBG.  Defendants' theft of GBG's Chinese business

-4-

1  occurred (i) in violation of each of the defendant's written and verbal contracts with
2  GBG, (ii) in violation of the fiduciary duties each of the defendants assumed on
3  behalf of GBG, (iii) though defendants' misappropriation and unlawful use of the
4  proprietary policy forms and related insurance documents developed by GBG, (iv)
5  through defendants' misappropriation and unlawful theft of the proprietary customer
6  and policyholder information maintained by GBG, (v) through defendants'
7  continuing and fraudulent misuse of the name "GBG" and the name and service mark
8  "TieCare International," (vi) through defendants' continuing misuse of the computer
9  systems of GBG, and (vii) through defendants' intentional interference with and
10  destruction of the relationships existing between GBG and its insurance partner in
11  China. In furtherance of these efforts, from September 2008 through June 15, 2009
12  defendants, and each of them, repeatedly represented that they were acting in good
13  faith in furtherance of GBG's interests. GBG relied on those representations in
14  allowing defendants, and each of them, to act on GBG's behalf. All such
15  representations were false. All of these acts were undertaken by defendants with the
16  intent of depriving GBG, a Delaware corporation with its corporate headquarters and
17  principal place of business in California, of the benefits of the contractual and other
18  business relationships associated with the GBG Chinese insurance program.

19

20  ## Overview of GBG's International Business

21

22  11.  For over 25 years GBG and its predecessor companies has specialized in
23  the development, marketing, underwriting, administration and service of life, health
24  and disability insurance products in the international market. GBG offers these
25  products throughout Europe, Asia, and the Americas under names including, but not
26  limited to, "Global Benefits Group," "GBG," "Global Benefits International,"
27  "TieCare LTD," "TieCare Financial Services," "TieCare," and the registered service
28  mark "TieCare International."

BARGER & WOLEN LLP
633 W. FIFTH ST.
FORTY-SEVENTH FLOOR
LOS ANGELES, CA 90071
(213) 680-2800

1    12.    GBG has focused on insurance products that provide life, health and
2    disability coverage to individuals or groups whose employees or members are living,
3    studying and/or working outside their country of citizenship, often times in many
4    different countries.  These persons include employees of multi-national companies
5    engaged in international commerce and students studying abroad.  These persons
6    have unique insurance needs, as they typically purchase insurance coverage in their
7    country of citizenship, but must obtain health care services in one or more other
8    countries.

9

10    13.    To meet the needs of this international health insurance market, GBG
11    has developed unique insurance products and systems that provide coverage and
12    service without geographic restrictions.  These include unique policy forms and
13    related documents, an international network of health care providers, administrative
14    services personnel and systems with expertise in the needs of international clients,
15    and claims personnel and systems adapted to the needs of international markets.  All
16    of these functions are headquartered in and serviced from GBG's corporate office in
17    Foothill Ranch, California.  All of these functions and services are accessed through
18    GBG's computer systems in Foothill Ranch, California.

19

20                        **GBG's Operations in China**

21

22    14.    Beginning in approximately 2000, GBG undertook efforts to expand its
23    insurance operations to cover employers and individuals who were citizens and/or
24    residents of Hong Kong and the People's Republic of China and/or employees of
25    multinational companies doing business in Hong King and China.  The Chinese
26    operations were to include all products historically offered by GBG, including
27    coverage written on behalf of employers and other groups and individual Chinese
28    citizens working, living or traveling in other countries.

BARGER & WOLEN LLP
633 W. FIFTH ST.
FORTY-SEVENTH FLOOR
LOS ANGELES, CA 90071
(213) 680-2800

1        15.    As part of its efforts to develop its Chinese operations GBG (i)
2  developed policy forms, applications, and other insurance related documents unique
3  to the Chinese insurance market and its regulatory requirements, (ii) developed
4  proprietary rates and underwriting criteria unique to the Chinese market, (iii)
5  developed a health care provider network tailored to meet the needs of the Chinese
6  market, (iv) established a Chinese administrative and service operations electronically
7  linked to GBG's California corporate headquarters, and (v) established a Chinese
8  claims operation electronically linked to GBG's California corporate headquarters.
9  At all times, all Chinese market underwriting, rating and claims payment decisions
10  were made in consultation with and subject to the final approval of personnel at the
11  California corporate headquarters of GBG.

12

13       16.    In furtherance of its efforts to develop the Chinese insurance market,
14  GBG entered into a series of service agreements with insurers that are licensed in and
15  regulated by Chinese insurance authorities. The most recent of these service
16  agreements existed between GBG and China Continent Property & Casualty
17  Insurance Co. Ltd. ("CCIC").

18

19       17.    Pursuant to these service agreements GBG agreed to provide in China
20  the unique international insurance products it had independently developed and to
21  supply all applications forms, policy forms, claims documents, provider networks,
22  rating services and systems, administrative services and systems, and claims services
23  and systems. This included access to the rating, administrative and claims services
24  and systems located at GBG corporate headquarters in California. CCIC had no
25  expertise, experience or ability to service the markets serviced by the GBG
26  international insurance operation. CCIC as a fully licensed and regulated Chinese
27  insurer, agreed to act as local Chinese underwriter and financial guarantee insurance
28  products underwritten by GBG in China. All quotes, policy applications, policies,

-7-

PLAINTIFF GLOBAL BENEFITS GROUP, INC.'S COMPLAINT

1   claims forms and other documents identified GBG as the insurer of the GBG Chinese
2   insurance program.  GBG controlled all underwriting and insurance policy binding
3   decisions related to the GBG Chinese insurance program.  GBG further agreed to
4   arrange directly or indirectly for the reinsurance of some or all of insurance
5   obligations assumed by GBG and CCIC under this arrangement.  CCIC and GBG
6   were to receive fees and participate in the profits generated by the GBG Chinese
7   insurance program on the terms and conditions stated in their agreements as they
8   varied from time to time.

9

10      18.    Since 2000 and continuing through the present, GBG has successfully
11   employed this structure and operated in China, marketing, underwriting and servicing
12   its international insurance products.  During the course of those operations GBG has
13   developed and maintained confidential and proprietary customer lists, agency
14   contacts, relationships with Chinese underwriters and reinsurers, policy forms,
15   computer systems, practices, and procedures.

16

17              **The Hopkins and Zhang Sales Representative Agreements**

18

19      19.    In furtherance of its effort to develop its Chinese insurance operations
20   GBG engaged the services of defendants Hopkins and Zhang.  Hopkins was at that
21   time representing GBG in the marketing and servicing of GBG insurance products in
22   a territory that included China, Korea, Indonesia, the Philippines and Japan.

23

24      20.    Effective February 24, 2000, GBG entered into an updated written Sales
25   Representative Agreement with defendant Hopkins (the "Hopkins Agreement").  A
26   true and correct copy of the Hopkins Agreement is attached as Exhibit "A."  The
27   Hopkins Agreement replaced a series of prior agreements going back over 15 years.
28   The prior agreements incorporated similar obligations to act in the best interests of

-8-

BARGER & WOLEN LLP
633 W. FIFTH ST.
FORTY-SEVENTH FLOOR
LOS ANGELES, CA 90071
(213) 680-2800

PLAINTIFF GLOBAL BENEFITS GROUP, INC.'S COMPLAINT

1  GBG and to maintain the confidentiality of all information related to GBG's
2  operations.

3

4      21.    Pursuant to section 1 of the Hopkins Agreement GBG engaged Hopkins
5  to act as an independent contractor and Regional Vice President and to use his "best
6  efforts" in pursuit of the "sales and marketing of the products and services marketed
7  by [GBG]." Pursuant to section 6 of the Hopkins Agreement these efforts were to be
8  undertaken "in the best interests of [GBG]." These duties included the duty to
9  maintain GBG's relationships with CCIC and with all of GBG'S policyholders and
10 marketing contacts.

11

12     22.    Effective January 1, 2004, GBG entered into a written Sales
13 Representative Agreement with defendant Zhang (the "Zhang Agreement"). A true
14 and correct copy of the Zhang Agreement is attached as Exhibit "B." Pursuant to
15 section 1 of the Zhang Agreement GBG engaged Zhang to act as an independent
16 contractor and Regional Manager and to use her "best efforts" in pursuit of the "sales
17 and marketing of the products and services marketed by [GBG]." Pursuant to section
18 6 of the Zhang Agreement these efforts were to be undertaken "in the best interests of
19 [GBG]." These duties included the duty to maintain GBG'S relationships with CCIC
20 and with all of GBG'S policyholders and marketing contacts.

21

22     23.    In furtherance of her duties under the terms of the Zhang Agreement,
23 GBG is informed and believes, and on that basis alleges, that Zhang created and
24 employed as a subcontractor defendant STK to assist in the marketing, administration
25 and service of GBG insurance products sold in China. Zhang's use of STK for this
26 purpose was agreed to by GBG for the purpose of enabling to perform her
27 responsibilities under the Zhang Agreement consistent with the requirements of
28 Chinese regulatory law. Pursuant to section 4 of the Zhang Agreement, as a

BARGER & WOLEN LLP
633 W. FIFTH ST.
FORTY-SEVENTH FLOOR
LOS ANGELES, CA 90071
(213) 680-2800

1  subcontractor of Zhang, STK became subject to all requirements of the Zhang

2  Agreement.

3

4       24.    Pursuant to section 8 of the Hopkins and Zhang Agreements headed

5  "Exclusive Relationship," each acknowledged the "proprietary" nature of the

6  contacts, marketing and other information of GBG and agreed to maintain an

7  "Exclusive Relationship" with GBG.  Section 8 of each of the agreements states in

8  relevant part:

9           "Contractor recognizes the unique nature of [GBG'S] business, and
            acknowledges that the individual contacts and marketing concepts of
10          [GBG] are proprietary to [GBG], and essential to the continued success
            of [GBG].  For that reason, while this Agreement is in effect, and in the
11          event of termination, for the periods specified in paragraph 11 below,
            Contractor agrees that he shall not represent in any way , directly or
12          indirectly, including, but not limited to, as an employee, consultant,
            representative, owner, partner, stockholder, or otherwise, any other
13          individual, partnership, insurance company, investment firm, broker,
            dealer, or similar entity, that is engaged in any business that is
14          competitive with the business of [GBG]."

15

16       25.    Pursuant to section 9 of the Hopkins and Zhang Agreements titled

17  "Confidential Information – Non-Disclosure," each agreed not to make use of or

18  divulge information used in the conduct of GBG's business both during and after the

19  termination of their relationship with GBG.  Section 9 states in relevant part:

20

21          "During and after the term of this Agreement, Contractor agrees not to
            communicate, divulge or use for the benefit of Contractor, or any other
22          person or entity, the business secrets or methods, business policies or
            forms, reports, lists or names of customers, or of former and/or
23          prospective customers of [GBG] of any type or description, except as
            expressly permitted herein."
24

25       26.    Pursuant to section 9 of the Hopkins and Zhang Agreements each

26  further agreed that they (i) would not utilize the GBG "System Information or

27  Account Information" or disclose it to third persons, (ii) use any written material

28

-10-

BARGER & WOLEN LLP
633 W. FIFTH ST.
FORTY-SEVENTH FLOOR
LOS ANGELES, CA 90071
(213) 680-2800

1  produce from the GBG "System Information or Account Information," (iii) or make
2  any efforts to continue making "electronic access to the [GBG] System and to all
3  Account Information" as located at GBG'S corporate headquarters in California. In
4  addition, pursuant to section 9 each agreed that for one year after termination they
5  would not "offer for sale, directly or indirectly" any "product or service" that is
6  "substantially similar to a product or service offered by [GBG]" or to represent any of
7  the "insurance underwriters represented by [GBG] or its affiliates." Both Hopkins
8  and Zhang acknowledged that in the event of any breach of the obligations and duties
9  created by section 9 GBG "shall be entitled to an injunction restraining Contractor . . .
10 from disclosing the [GBG] System Information or the Account Information, or from
11 rendering any services to any person, corporation, association or other entity to whom
12 such [GBG] System Information or Account Information has been disclosed."

14     27.    Pursuant to section 15 of the Hopkins and Zhang Agreements each
15 acknowledged the following facts:

16     "Contractor acknowledges that the marketing of [GBG'S] products and
    services involves:
17
18     (a)   knowledge of the key individuals in the market niches that [GBG]
    pursues;

19     (b)   relationships with specified product providers, and knowledge of
    specific product provisions and features;
20
21     (c)   critical relationships with [GBG] clients, both groups and
    individuals;

22     (d)   relationships with professional organizations active in the market
    segments important to [GBG];
23
24     (e)   business relationships with third party organizations who may sub
    contract, sponsor, recommend or otherwise engage in marketing
    activities with [GBG];
25
26     (f)   the development and maintenance of a high level of confidence
    and credibility in the international financial services marketplace,
27     which is predicated on the propriety, knowledge, data bases,
    products, and expertise of [GBG];

28     (g)   a substantial investment of money and management effort by

-11-

BARGER & WOLEN LLP
633 W. FIFTH ST.
FORTY-SEVENTH FLOOR
LOS ANGELES, CA 90071
(213) 680-2800

1
2
[GBG] in the development of [GBG's] business niche, the training and support of Contractor, and the promotion of Contractor's business."

3  Based on these acknowledgements, Hopkins and Zhang each agreed that for a period
4  of one year after termination they would not sell or offer products competitive with
5  the GBG product. In addition, Hopkins and Zhang each agreed that for a period of
6  one year after termination they would not represent any of the insurance underwriters
7  – including CCIC – or investment firms represented by GBG during the 12 months
8  prior to termination.

9

10  28.    As consideration for these promises and obligations, GBG agreed to pay
11  Hopkins and Zhang commissions and fees as provided under the terms of their
12  respective Agreements.

13

14  **Defendants' Misappropriation of the GBG Chinese Insurance Program**

15

16  29.    Beginning in approximately September 2008 and continuing through the
17  present, Defendants, and each of them, engaged in a course of conduct designed to (i)
18  misappropriate the GBG Chinese insurance program and policyholders participating
19  in that program, (ii) misappropriate the proprietary rates and forms associated with
20  the GBG Chinese insurance program, (iii) improperly misappropriate and/or interfere
21  with the contractual/business relationship existing between GBG and CCIC, (iv)
22  improperly make use of GBG's computer systems for the purpose of
23  misappropriating the GBG Chinese insurance program, (v) improperly make use of
24  the service marks of GBG, and (vi) otherwise breach their contractual, extra-
25  contractual, legal and equitable duties to GBG. From September 2008 through the
26  present, defendants, and each of them, repeatedly represented to GBG that they were
27  acting solely on GBG's behalf and in furtherance of GBG's interests consistent with
28  their duties under their respective agreements. These representations were made with

-12-

BARGER & WOLEN LLP
833 W. FIFTH ST.
FORTY-SEVENTH FLOOR
LOS ANGELES, CA 90071
(213) 680-2800

1  the intent of deceiving GBG into believing that defendants could be entrusted with
2  continued responsibility for the operation of the GBG China program.  Those
3  representations were relied on by GBG in keeping defendants in their positions o
4  responsibility.  Those representations were false.  All of these actions were taken by
5  Defendants with the intent to misappropriate all aspects of the GBG China program
6  for defendants' own benefit, cause harm to GBG, and deprive GBG of the contractual
7  and other business relationships associated with the GBG Chinese Insurance
8  Program.
9
10    30.    In September 2008 Hopkins and Zhang were, on behalf of GBG,
11  responsible for the January 1, 2009, renewal of the service and reinsurance
12  agreements with CCIC related to the GBG Chinese insurance program.  To that end,
13  all communications concerning the renewal of the agreements with CCIC were
14  provided to Hopkins and Zhang for communication to CCIC and its representatives.
15  In violation of their duties, Hopkins and Zhang never forwarded those
16  communications to CCIC.  In addition, in violation of their duties Hopkins and Zhang
17  never forwarded to GBG communications from CCIC regarding the renewal of those
18  programs.  GBG is informed and believes, and on that basis alleges, that throughout
19  this period Hopkins and Zhang falsely represented to CCIC and CCIC continued to
20  believe that Hopkins and Zhang were in good faith representing GBG's interests and
21  pursuing renewal of these agreements.  Hopkins made these representations
22  repeatedly, including during the course of February 2009 meetings with GBG's CEO
23  at the company's headquarters in California and in dozens of e-mails sent to GBG's
24  California corporate headquarters during the period extending from September 2008
25  through at least June 15, 2009.
26
27    31.    In September 2008 GBG observed irregularities in the renewal of group
28  employer accounts underwritten by GBG through the China GBG office as managed

-13-

BARGER & WOLEN LLP
633 W. FIFTH ST.
FORTY-SEVENTH FLOOR
LOS ANGELES, CA 90071
(213) 680-2800

1 by Hopkins and Zhang. At that time Hopkins and Zhang represented to GBG
2 personnel at the company's California corporate headquarters that certain large
3 Chinese program accounts, including GBG's largest account with CCIC, had renewed
4 on terms proposed by GBG.

5

6     32.   Despite these representations, GBG has not received premium on these
7 accounts, which premium outstanding now totals in excess of $10,000,000. During
8 discussions with GBG personnel located at the company's California corporate
9 headquarters, defendants Hopkins and Zhang represented to GBG'S CEO Andrew
10 Thornburn that the delay in the payment or reporting of premium due was a result of
11 a lack of monthly reporting from CCIC. Hopkins and Zhang further represented that
12 CCIC would provide no further premium payments or reports until a new reinsurance
13 agreement covering the period beginning January 1, 2009 was finalized. Hopkins and
14 Zhang further represented that all premium payments due would be paid and
15 reconciled once a new reinsurance agreement effective January 1, 2009 was finalized.
16

17     33.   Beginning in September 2008 and continuing through June 2009
18 defendants Hopkins and Shang requested and received from GBG new policy and
19 renewal proposals for dozens of GBG China program accounts. Defendants Hopkins
20 and Chang Chinese represented to GBG personnel at the company's California
21 corporate headquarters that these proposals were being presented to new and renewal
22 policyholders of GBG in good faith and in the expectation that such policies would be
23 written by GBG as accepted by the company.

24

25     34.   GBG is informed and believes that the representations specified in
26 paragraphs 28 through 33 above were false. These representations were relied on by
27 GBG in the conduct of its affairs. Throughout this period Hopkins and Zhang, aided
28 by and in concert with defendants Khadivi and STK, were engaged in a conspiracy

-14-

BARGER & WOLEN LLP
633 W. FIFTH ST.
FORTY-SEVENTH FLOOR
LOS ANGELES, CA 90071
(213) 680-2800

1 and plan to misappropriate the GBG Chinese insurance program, including but not

2 limited to its policyholder renewals and its GBG's relationship with CCIC. In

3 furtherance of that conspiracy and plan, Defendants engaged in improper activities

4 including, but not limited to, the following:

      (a)   Failing to account for and deliver to GBG over $10,000,000 of premium due and payable to GBG on accounts underwritten by GBG, which amounts are the property of GBG;

      (b)   Establishing with CCIC and London Life Insurance Company ("London Life") and while under contract with GBG, a Chinese insurance program modeled on the application forms, policy forms, rating systems, administrative systems and service systems of GBG. This was done for the express purpose of unfairly competing with GBG and misappropriating the Chinese insurance program GBG developed over the last ten years, along with the relationships existing between GBG and CCIC and between GBG and its policyholders;

      (c)   Marketing to and improperly misappropriating on behalf of themselves, CCIC and/or London Life the renewal of GBG's Chinese insurance program policies while under contract with GBG and/or in violation of Defendants contractual and other obligations to GBG;

      (d)   Improperly using the names "Global Benefits," "GBG," "Global Benefits International," the name and registered service mark "TieCare International" to improperly solicit and misappropriate

-15-

BARGER & WOLEN LLP
633 W. FIFTH ST.
FORTY-SEVENTH FLOOR
LOS ANGELES, CA 90071
(213) 680-2800

1  issuance of new and the renewal of GBG's China program

2  policyholders in a competing program established by Defendants

3  in conjunction with London Life;

4

5  (e)  Falsely representing to agents and policyholders of GBG that their

6  policies were being renewed with GBG when, in fact, those

7  policies were being misappropriated and renewed in the

8  competing program offered by Defendants in conjunction with

9  London Life;

10

11  (f)  Improperly using GBG's policy forms, rating systems,

12  administrative systems, claims systems, customer lists, agent lists

13  and other proprietary information to establish for their own benefit

14  a completing program in conjunction with London Life.

15

16  (g)  From September 2008 through June 15, 2009 falsely representing

17  to representatives of GBG in China and in California, both in

18  person, by phone and by electronic mail, that they continued to

19  represent the interests of GBG with respect to the Chinese

20  insurance program.

21

22  35.  In May 2009, GBG's founder and former CEO met with defendants

23  Hopkins and Zhang in China to address the ongoing failure of GBG to receive any

24  premium reports or premium on China program accounts since September 2008.

25  GBG's founder and CEO was sent to address these concerns based in part on his over

26  20 year relationship with Hopkins. During the May 2009 meeting GBG's former

27  CEO and founder expressed concern with the delay in finalizing the renewal of

28  GBG's service and reinsurance agreements. During that meeting Hopkins and Zhang

-16-

BARGER & WOLEN LLP
633 W. FIFTH ST.
FORTY-SEVENTH FLOOR
LOS ANGELES, CA 90071
(213) 680-2800

1 represented that the agreements with CCIC were in the process of being finalized,
2 that the discussions were difficult, but that all reports and premium would be
3 forwarded as soon as the agreements were finalized. During that meeting Hopkins
4 and Zhang further represented that all 2009 renewals were being negotiated by each
5 on GBG's behalf and for GBG's benefit. During that meeting Hopkins and Zhang
6 represented that they understood all GBG business was the property of GBG and that
7 they were acting solely on GBG's behalf and in GBG's best interests. In fact, these
8 representations were consistent with the representations Hopkins and Zhang had
9 made to GBG, including GBG's CEO Andrew Thorton, consistently since September
10 2008.

11

12     36.    GBG's former CEO and founder believed these representations and
13 reported them to GBG in California. Again, these representations were consistent
14 with those made by Hopkins and Zhang to GBG since September 2008 when issues
15 concerning the China program first arose.

16

17     37.    GBG relied on those representations by, among other things, deciding to
18 continue the Hopkins and Zhang Agreements in effect, continuing to provide Hopkins
19 and Zhang with access to GBG policyholder and producer information, continuing to
20 provide Hopkins and Zhang with access to GBG computer systems, forms and rating
21 systems and policyholder renewal information.

22

23     38.    By mid June 2009 none of the irregularities in the reporting or payment
24 of premium and the renewal of accounts discussed with GBG's founder and former
25 CEO during the May 2009 meeting had been resolved. Moreover, the renewal of the
26 CCIC service and reinsurance agreements still had not been finalized. Accordingly,
27 GBG's founder and former CEO again met with defendants Hopkins and Zhang in
28 China to express concern with the failure of Hopkins and Zhang to remit premium

-17-

BARGER & WOLEN LLP
633 W. FIFTH ST.
FORTY-SEVENTH FLOOR
LOS ANGELES, CA 90071
(213) 680-2800

1 due and with apparent irregularities in the renewal of certain accounts. Also in
2 attendance at that meeting were representatives of Willis Reinsurance. At that time
3 meeting defendants Hopkins and Zhang admitted that they had not been representing
4 GBG for some time, but instead had been developing and marketing for their own
5 benefit a competing program that would enable them to misappropriate the GBG
6 China program business and relationship between GBG and CCIC for their own uses.

7

8     39.   After this meeting occurred GBG approached CCIC. Representatives of
9 CCCI indicated that Hopkins and Zhang had deceived them into believing defendants
10 Hopkins and Zhang had been representing GBG in efforts to renew the agreements
11 existing between GBG and CCIC. In fact, defendants Hopkins and Zhang were
12 acting contrary to GBG's interests as part of an effort to misappropriate for their own
13 benefit the relationship existing between GBG and CCIC and the relationships
14 existing between GBG and its policyholders and producers. During the meeting with
15 CCIC representatives of CCIC indicated that meetings that Hopkins and Zhang had
16 represented occurred in an effort to renew the CCCI/GBG service and reinsurance
17 agreements had never taken place. CCCI indicated that it was unaware of the fact
18 that the GBG program had been misappropriated by defendants Hopkins and Zhang.

19

20     40.   Immediately after these meetings, on June 15, 2009, GBG terminated the
21 Service Agreements of defendants Hopkins and Zhang. True and correct copies of
22 the termination letters are attached as Exhibit "D."

23

24     41.   Defendants' improper efforts to misappropriate GBG'S Chinese program
25 is ongoing and continuing. Defendants' improper efforts include the following
26 activities:

27

28

-18-
PLAINTIFF GLOBAL BENEFITS GROUP, INC.'S COMPLAINT

(a)    Improperly displaying in international commerce and in the United States on their web site policy forms and related documents developed by GBG and in many cases continuing to bear the names GBG, Global Benefits Group International, TieCAre, and the registered service mark TieCare International.

(b)    Improperly using in international commerce and in the United States the GBG and TieCare names, logos and service marks on a web site maintained by Defendants for the purpose of marketing the London Life product developed by Defendants for the purpose of improperly misappropriating GBG's Chinese insurance program business.

(c)    Improperly representing on their web site that they own TieCare International service marks that are legally registered to GBG.

(d)    Improperly redirecting internet traffic targeted to the GBG Chinese insurance program to a web site maintained by Defendants for the purpose of marketing the London Life product developed by Defendants for the purpose of improperly misappropriating GBG's Chinese insurance program business.

(e)    Improperly using GBG's proprietary policyholder information to obtain an unfair competitive advantage in misappropriating the renewal of policies issued by GBG for Defendants own benefit in the London Life program;

-19-

BARGER & WOLEN LLP
633 W. FIFTH ST.
FORTY-SEVENTH FLOOR
LOS ANGELES, CA 90071
(213) 680-2800

PLAINTIFF GLOBAL BENEFITS GROUP, INC.'S COMPLAINT

1        (f)    Improperly using GBG's proprietary producer information to

2                obtain an unfair competitive advantage in marketing their

3                competing London Life program to producers who have

4                maintained relationships with GBG.

5

6        (g)    Improperly using the proprietary application forms, policy forms,

7                rating systems, administrative systems and service systems

8                developed by GBG to obtain an unfair competitive advantage in

9                the marketing of their competing London Life program to existing

10              and potential new policyholder of GBG.

11

12      (h)    Continuing to access and make use of the computer systems of

13              GBG to service existing GBG clients with the intent of deceiving

14              these persons into believing that GBG continues to service their

15              policies through Defendants.

16

17      (i)    Improperly disclosing the proprietary information of GBG

18              acquired solely as a result of their relationship with GBG to third

19              parties including, but not limited to, MSH China, London Life and

20              CCIC;

21

22      (j)    Falsely representing to clients of GBG that their policies of

23              insurance were being renewed with GBG when, in fact, those

24              policies were being renewed in defendants' copy cat product.

25              During the last two weeks two clients of GBG have indicated that

26              defendants represented that their coverage with GBG would be

27              renewed with GBG when, in fact, they were renewed in

28              defendants' copy cat product.

-20-

BARGER & WOLEN LLP
633 W. FIFTH ST.
FORTY-SEVENTH FLOOR
LOS ANGELES, CA 90071
(213) 680-2800

1  42.   All of these acts are ongoing and continuing.  All of these acts are done
2  with the intent of depriving GBG, a Delaware corporation with its corporate
3  headquarters and principal place of business in California, of the benefits of the
4  contractual and other business relationships associated with the GBG Chinese
5  insurance program.

6

7  **FIRST CLAIM FOR RELIEF**
8  **(Breach of Written Contract against Defendant Hopkins)**
9

10  43.   GBG refers to and incorporates by reference the allegations stated in
11  paragraphs 1 through 42 above as though fully set forth herein.

12

13  44.   GBG has performed all conditions, covenants, and duties it assumed
14  under the terms of the Hopkins Agreement, including the payment of over $4,200,000
15  of compensation from 2006 through 2008.

16

17  45.   By engaging in those activities set forth at paragraphs 28 through 42
18  above, Hopkins breached his obligations under the Hopkins Agreement.  Those
19  activities included, but are not limited to:

20

21  (a)   Misappropriation and interference with the relationship existing
22  between GBG and CCIC with respect to the GBG China insurance
23  program that Hopkins promised to use his "best efforts" to
24  maintain on behalf of GBG;

25

26  (b)   Misappropriation and interference with the policyholder renewals,
27  producer relationships, and other assets of the GBG China

28

1    insurance program that Hopkins promised to use his "best efforts"

2    to maintain on behalf of GBG;

3

4    (c)    Misappropriation of the trade secrets and other proprietary

5            information of GBG;

6

7    (d)    Misappropriation and misuse of the service marks of GBG;

8

9    (e)    Acting for his own benefit and in violation of his duty of loyalty

10          and promise to refrain from competition with GBG both during

11          and after the term of the Hopkins Agreement.

12

13   (f)    Failing to account for or pay to GBG premium associated with

14          GBG China insurance program policies collected by Zhang on

15          GBG's behalf.

16

17   (g)    Falsely representing to GBG from September 2008 through June

18          2009 that he was acting in the best interests of GBG and

19          continuing to develop and administer the GBG program for

20          GBG's benefit when, in fact he and the other defendants' were

21          engaged in efforts to misappropriate the program for their own

22          benefit;

23   .

24   (h)    Continuing to falsely represent in international commerce and in

25          the United States that they are representing the GBG product

26          including, but not limited to, representations to persons seeking to

27          renew coverage with GBG – not defendants – in the GBG China

28          insurance program.

-22-

1    46.    As a result of Hopkins' breach of his obligations under the Hopkins
2  Agreement, GBG has suffered damages in amount not less than $10,000,000.
3
4    47.    As outlined at paragraphs 33 through 39 above, Hopkins continues to
5  breach his obligations under the Hopkins Agreement and, by doing so, is causing
6  GBG to suffer ongoing, continuing and irreparable harm for which damages will not
7  be an adequate remedy. GBG therefore requests that Hopkins be preliminarily and
8  permanently enjoined from engaging in such activities.
9
10                     **SECOND CLAIM FOR RELIEF**
11              **(Breach of Written Contract against Defendant Zhang)**
12
13    48.    GBG refers to and incorporates by reference the allegations stated in
14  paragraphs 1 through 47 above as though fully set forth herein.
15
16    49.    GBG has performed all conditions, covenants, and duties it assumed
17  under the terms of the Zhang Agreement.
18
19    50.    By engaging in those activities set forth at paragraphs 28 through 42
20  above, Zhang breached her obligations under the Zhang Agreement. Those activities
21  included, but are not limited to:
22          (a)   Misappropriation and interference with the relationship existing
23                between GBG and CCIC with respect to the GBG China insurance
24                program that Zhang promised to use her "best efforts" to maintain
25                on behalf of GBG;
26
27          (b)   Misappropriation and interference with the policyholder renewals,
28                producer relationships, and other assets of the GBG China

-23-

BARGER & WOLEN LLP
633 W. FIFTH ST.
FORTY-SEVENTH FLOOR
LOS ANGELES, CA 90071
(213) 680-2800

1    insurance program that Zjang promised to use her "best efforts" to
2    maintain on behalf of GBG;
3
4    (c)    Misappropriation of the trade secrets and other proprietary
5           information of GBG;
6
7    (d)    Misappropriation and misuse of the registered service marks of
8           GBG;
9
10   (e)    Establishing STK as a subcontractor for the administration of
11          GBG China program polices while under contract with GBG for
12          the purpose of advancing her efforts to misappropriate the
13          relationship between GBG and CCIC, misappropriate the
14          relationships between GBG and its policyholders, and otherwise
15          acting contrary to the interests of GBG; and
16
17   (f)    Acting for her own benefit and in violation of her duty of loyalty
18          and promise to refrain from competition with GBG both during
19          and after the term of the Zhang Agreement;
20
21   (g)    Failing to account for or pay to GBG premium associated with
22          GBG China insurance program policies collected by Zhang on
23          GBG's behalf.
24
25   (h)    Falsely representing to GBG from September 2008 through June
26          2009 that she was acting in the best interests of GBG and
27          continuing to develop and administer the GBG program for
28          GBG's benefit when, in fact she and the other defendants' were

-24-

BARGER & WOLEN LLP
633 W. FIFTH ST.
FORTY-SEVENTH FLOOR
LOS ANGELES, CA 90071
(213) 680-2800

PLAINTIFF GLOBAL BENEFITS GROUP, INC.'S COMPLAINT

1  |  engaged in efforts to misappropriate the program for their own

2  |  benefit

3

4  |  51.  As a result of Zhang's breach of her obligations under the Zhang

5  Agreement, GBG has suffered damages in amount not less than $10,000,000.

6

7  |  52.  As outlined at paragraphs 33 through 39 above, Zhang continues to

8  breach her obligations under the Zhang Agreement and, by doing so, is causing GBG

9  to suffer ongoing, continuing and irreparable harm for which damages will not be an

10  adequate remedy.  GBG therefore requests that Zhang be preliminarily and

11  permanently enjoined from engaging in such activities.

12

13  |  **THIRD CLAIM FOR RELIEF**

14  |  **(Breach of Written Contract against Defendant Khadivi)**

15

16  |  53.  GBG refers to and incorporates by reference the allegations stated in

17  paragraphs 1 through 52 above as though fully set forth herein.

18

19  |  54.  Beginning in approximately 2003 and continuing into 2008, GBG

20  entered into a relationship with Khadivi under which Khadivi agreed to assist GBG

21  with the placement and negotiation of reinsurance agreements covering GBG life,

22  health and disability accounts. As part of this process and to enable him to negotiate

23  reinsurance agreements on GBG's behalf, Khadivi was provided with access to

24  confidential, proprietary and trade secret information concerning GBG's business

25  operations, including (i) customer lists, (ii) data concerning the insurance

26  requirements of customers, (iii) coverage information, (iv) actuarial pricing

27  information, and (v) actuarial and financial profitability information.  None of this

28

BARGER & WOLEN LLP
633 W. FIFTH ST.
FORTY-SEVENTH FLOOR
LOS ANGELES, CA 90071
(213) 680-2800

1 information is made available to the public. This included information relevant to the
2 GBG China insurance program.

3

4       55.     The relationship with Khadivi developed to the point that GBG provided
5 Khadivi with a 10% stock ownership in GBG. In addition, Khadivi's knowledge of
6 GBG's business operations became so extensive that Khadivi agreed that he would
7 become CEO of GBG upon the retirement of GBG's current CEO.

8

9       56.     At the time GBG provided stock to Khadivi and the understanding
10 regarding Khadivi's assumption of the CEO role was reached, Khadivi was employed
11 by PWS, a London based reinsurance broker.

12

13      57.     In 2006 Khadivi approached GBG with a proposal under which Khadivi
14 would resign from PWS and enter into a new arrangement under which Khadivi
15 would begin to perform reinsurance services on behalf of GBG directly. Under this
16 proposed arrangement GBG would agree to finance and form a reinsurance broker
17 affiliate to be headed by Khadivi. GBG and Khadivi agreed to work toward the
18 formation of that affiliate, and Khadivi continued to act through PWS as reinsurance
19 broker on GBG's behalf.

20

21      58.     By the end of 2007 GBG and Khadivi agreed that it was time to establish
22 the reinsurance broker affiliate of GBG. As part of the effort Khadivi represented
23 that he was prepared to resign from PWS. Khadivi asked GBG to contribute
24 $500,000 of capital to be used for start up costs, including the rental of office space
25 and the payment of employee salaries. Khadivi requested that this amount be
26 deposited in Khadivi's personal bank account located in New York City, New York.
27 GBG made the deposit as requested.

28

-26-

BARGER & WOLEN LLP
633 W. FIFTH ST.
FORTY-SEVENTH FLOOR
LOS ANGELES, CA 90071
(213) 680-2800

1    59.    Despite having made this deposit, Khadivi did not resign from PWS or
2  act to establish the reinsurance brokerage affiliate on behalf of GBG. Khadivi also
3  did not return, and to the present has not returned, all or any portion of the $500,000
4  of start up capital deposited by GBG into Khadivi's New York bank account.

5

6    60.    In April 2008 Khadivi resigned from PWS. To preserve its relationship
7  with Khadivi, GBG terminated PWS. However, Khadivi did not start the reinsurance
8  broker affiliate as represented to GBG. Instead, Khadivi represented that he was not
9  yet prepared to perform, that the formation of the GBG affiliated brokerage be
10  deferred, and that for a period of time the parties agree to maintain their
11  principal/broker relationship.

12

13    61.    Shortly after terminating PWS, PWS informed GBG that Khadivi has
14  misrepresented the reinsurance "commissions" paid on GBG reinsurance agreements,
15  thereby underpaying amounts owed to PWS. Any such misrepresentation would also
16  increase the cost of reinsurance to GBG. Given the concerns created by this incident,
17  GBG sought to restructure its relationship with Khadivi. This restructuring included
18  Khadivi's surrender of his stock in GBG and the execution of a Consulting
19  Agreement between GBG and Khadivi

20

21    62.    Effective April 15, 2008, defendant Khadivi and GBG entered into the
22  Khadivi Agreement. A true and correct copy of the Khadivi Agreement is attached as
23  Exhibit "C." By its own terms, the Khadivi Agreement is enforceable in the United
24  States.

25

26    63.    Pursuant to the Khadivi Agreement, Khadivi promised to represent GBG
27  in the implementation and operation of GBG's European affiliate, Global Benefits
28  Europe.

-27-

PLAINTIFF GLOBAL BENEFITS GROUP, INC.'S COMPLAINT

1     64.    Pursuant to section 2 of the Khadivi Agreement, Khadivi and GBG
2  promised to "maintain a cooperative relationship with respect to future business
3  activities and to refrain from any disparaging or derogatory statements regarding the
4  other."

5

6     65.    Pursuant to section 2 of the Khadivi Agreement, Khadivid further agreed
7  that "the details of their business cooperation prior to, during and subsequent to the
8  date of this agreement shall be confidential, and neither party shall share any such
9  details with any individual or entity."

10

11    66.    During the course of his relationship with GBG and during the term of
12  the Khadivi Agreement, Khadivi was provided information relevant to all aspects of
13  the GBG China insurance program including, but not limited to, confidential and
14  proprietary information concerning (i) the structure of the insurance products
15  comprising the GBG China insurance program, (ii) the policy and other forms
16  applicable to the GBG China insurance program, (iii) the pricing, experience and
17  profitability of the GBG China insurance program, (iv) the relationship existing
18  between GBG and CCIC with respect to the GBG China insurance program, (iv) the
19  reinsurance structure, costs and profitability of the GBG China insurance program.

20

21    67.    As consideration for promises, GBG agreed to pay a consulting fee.

22

23    68.    GBG has performed all conditions, covenants, and duties it assumed
24  under the terms of the Khadivi Agreement, other than those excused by Khadivi's
25  actions.

26

27    69.    Beginning in or about September 2008 Khadivi violated his contractual
28  duties of loyalty, cooperation and confidentiality by assisting defendants Hopkins,

-28-

PLAINTIFF GLOBAL BENEFITS GROUP, INC.'S COMPLAINT

1 Zhang and STK in the misappropriation of the GBG China insurance program. In
2 particular, Khadivi breached his duties of loyalty and cooperation by assisting and/or
3 representing defendants Khadivi, Zhang and STK in the misappropriation of the
4 relationship existing between GBG and CCIC and the relationships existing between
5 GBG and the reinsurers participating in the GBG China Insurance Program. As part
6 of those efforts Khadivi made use of the confidential and proprietary information
7 provided to him by GBG during the term of their relationship and, by doing so further
8 breached his duties of loyalty and cooperation, as well as his duty to maintain the
9 confidentiality of the information GBG provided to him during the term of the
10 Khadivi Agreement.

12     70.   In addition, Khadivi has breached his obligations by misappropriating
13 and failing to return to GBG the $500,000 of start up capital GBG deposited into
14 Khadivi's personal New York account to be used to create the GBG reinsurance
15 broker affiliate.

17     71.   As a result of Khadivi's breach of his obligations under the Khadivi
18 Agreement, GBG has suffered damages in amount not less than $10,000,000.

20     72.   As outlined at paragraphs 33 through 42 and 54 through 71 above,
21 Khadivi continues to breach his obligations under the Khadivi Agreement and, by
22 doing so, is causing GBG to suffer ongoing, continuing and irreparable harm for
23 which damages will not be an adequate remedy. GBG therefore requests that Khadivi
24 be preliminarily and permanently enjoined from engaging in such activities.

25
26
27
28

BARGER & WOLEN LLP
633 W. FIFTH ST.
FORTY-SEVENTH FLOOR
LOS ANGELES, CA 90071
(213) 680-2800

-29-
PLAINTIFF GLOBAL BENEFITS GROUP, INC.'S COMPLAINT

# FOURTH CLAIM FOR RELIEF

## (Breach of Oral Contract against Defendant Khadivi)

73.    GBG refers to and incorporates by reference the allegations stated in paragraphs 1 through 72 above as though fully set forth herein.

74.    Beginning in approximately 2003 GBG entered into an oral agreement with defendant Khadivi. Pursuant to that oral agreement Khadivi was engaged to assist GBG in the placement of contracts that would reinsure the interests of GBG and CCIC in the risks covered by the GBG China insurance program.

75.    Pursuant to the terms of that oral agreement Khadivi promised to use his best efforts to loyally represent and act in furtherance of the interests of GBG with respect to the GBG China insurance program. Khadivi further promised to maintain the confidentiality of all confidential and proprietary information regarding the GBG China insurance program that GBG provided to him during the course Khadivi's representation.

76.    As consideration for the promises contained in the oral agreement, GBG promised to pay Khadivi and/or his employer commissions and fees as earned on GBG China insurance program reinsurance placed.

77.    GBG has performed all conditions, covenants, and duties it assumed under the terms of the oral agreement with Khadivi.

78.    During the course of his representation of GBG and during the term of the oral agreement, Khadivi was provided information relevant to all aspects of the GBG China insurance program including, but not limited to, confidential and

-30-

BARGER & WOLEN LLP
633 W. FIFTH ST.
FORTY-SEVENTH FLOOR
LOS ANGELES, CA 90071
(213) 680-2800

1  proprietary information concerning (i) the structure of the insurance products
2  comprising the GBG China insurance program, (ii) the policy and other forms
3  applicable to the GBG China insurance program, (iii) the pricing, experience and
4  profitability of the GBG China insurance program, (iv) the relationship existing
5  between GBG and CCIC with respect to the GBG China insurance program, (iv) the
6  reinsurance structure, costs and profitability of the GBG China insurance program.
7
8  79.  Beginning in or about September 2008 Khadivi violated his contractual
9  duties of loyalty, cooperation and confidentiality by assisting defendants Hopkins,
10  Zhang and STK in the misappropriation of the GBG China insurance program. In
11  particular, Khadivi breached his duties of loyalty and cooperation by assisting and/or
12  representing defendants Khadivi, Zhang and STK in the misappropriation of the
13  relationship existing between GBG and CCIC and the relationships existing between
14  GBG and the reinsurers participating in the GBG China Insurance Program. As part
15  of those efforts Khadivi made use of the confidential and proprietary information
16  provided to him by GBG during the term of their relationship and, by doing so further
17  breached his duties of loyalty and cooperation, as well as his duty to maintain the
18  confidentiality of the information GBG provided to him during the term of the
19  Khadivi Agreement.
20
21  80.  In addition, Khadivi has breached his obligations by misappropriating
22  and failing to return to GBG the $500,000 of start up capital GBG deposited into
23  Khadivi's personal New York account to be used to create the GBG reinsurance
24  broker affiliate.
25
26  81.  As a result of Khadivi's breach of his obligations under his oral
27  agreement, GBG has suffered damages in amount not less than $10,000,000.
28

BARGER & WOLEN LLP
633 W. FIFTH ST.
FORTY-SEVENTH FLOOR
LOS ANGELES, CA 90071
(213) 680-2800

1  82. As outlined at paragraphs 33 through 42 and 54 through 71 and 74
2  through 81 above, Khadivi continues to breach his obligations under the Khadivi
3  Agreement and, by doing so, is causing GBG to suffer ongoing, continuing and
4  irreparable harm for which damages will not be an adequate remedy. GBG therefore
5  requests that Khadivi be preliminarily and permanently enjoined from engaging in
6  such activities.

7

8  ## FIFTH CLAIM FOR RELIEF
9  ### (Conversion against Defendant Khadivi)

10

11  83. GBG refers to and incorporates by reference the allegations stated in
12  paragraphs 1 through 82 above as though fully set forth herein.

13

14  84. In late 2007 Khadivi agreed to establish the reinsurance broker affiliate
15  for and to the benefit of GBG. To further that effort Khadivi asked GBG to provide
16  him with $500,000 of capital to be used for start up costs, including the rental of
17  office space and the payment of employee salaries. Khadivi requested that this
18  amount be deposited in Khadivi's personal bank account located in New York City,
19  New York. GBG made the deposit as requested.

20

21  85. Khadivi did not establish a reinsurance brokerage affiliate on behalf of
22  GBG. Khadivi also did not return, and to the present has not returned, all or any
23  portion of the $500,000 of start up capital deposited by GBG into Khadivi's New
24  York bank account. Instead, Khadivi converted these sums to his own use.

25

26  86. Khadivi's conversion of these sums to his own use has damaged GBG in
27  the amount of $500,000.

28

BARGER & WOLEN LLP
633 W. FIFTH ST.
FORTY-SEVENTH FLOOR
LOS ANGELES, CA 90071
(213) 680-2800

-32-
PLAINTIFF GLOBAL BENEFITS GROUP, INC.'S COMPLAINT

1    87.   Khadivi's acts of conversion were undertaken with fraud, malice or

2 oppression, or with a conscious disregard of the rights of GBG, and, therefore, GBG

3 is entitled to an award of exemplary and punitive damages against Khadivi in an

4 amount according to proof.

5

6                          **SIXTH CLAIM FOR RELIEF**

7                  **(Breach of Fiduciary Duty against All Defendants)**

8

9    88.   GBG refers to and incorporates by reference the allegations stated in

10 paragraphs 1 through 87 above as though fully set forth herein.

11

12    89.   Pursuant to the agreements executed by defendants, defendants, and each

13 of them, agreed to act as the agents and representatives of GBG with respect to the

14 GBG China insurance program. By doing so, defendants, and each of them, agreed to

15 act in a fiduciary capacity in furtherance of the interests of GBG.

16

17    90.   Defendants, and each of them, have breached their fiduciary duties by

18 engaging in activities including, but not limited to, the following:

19

20          (a)   Conspiring to misappropriate and misappropriating for their own

21                benefit the GBG China insurance program that defendants, and

22                each of them, promised to develop and maintain on GBG's behalf

23                and for GBG's benefit;

24

25          (b)   Misappropriating and interfering with the relationship existing

26                between GBG and CCIC with respect to the GBG China insurance

27                program that defendants, and each of them, promised to use their

28                "best efforts" to maintain on behalf of GBG;

-33-

1

2    (c)   Misappropriating and interfering with the relationships existing

3        between GBG and the reinsurers participating in the GBG China

4        program despite promising to use their "best efforts" to maintain

5        on behalf of GBG;

6

7    (d)   Misappropriating and interfering with the policyholder renewals,

8        producer relationships, and other assets of the GBG China

9        insurance program that defendants, and each of them, promised to

10       use her "best efforts" to maintain on behalf of GBG;

11

12    (e)   Misappropriating the trade secrets and other proprietary

13       information of GBG;

14

15    (f)   Misappropriating and misusing the registered service marks of

16       GBG;

17

18    (g)   Establishing STK as a subcontractor for the administration of

19       GBG China program polices as part of an effort to misappropriate

20       the relationship between GBG and CCIC, misappropriate the

21       relationships between GBG and its policyholders, and otherwise

22       acting contrary to the interests of GBG; and

23

24    (h)   Acting for her their own benefit and in violation of her duty of

25       loyalty and promise to refrain from competition with GBG both

26       during and after the terms of their agreements;

27

28

-34-

BARGER & WOLEN LLP
633 W. FIFTH ST.
FORTY-SEVENTH FLOOR
LOS ANGELES, CA 90071
(213) 680-2800

1        (i)   Failing to account for or pay to GBG premium associated with

2              GBG China insurance program policies collected by Zhang on

3              GBG's behalf;

4

5        (j)   Falsely representing to GBG from September 2008 through June

6              2009 that they were acting in the best interests of GBG and

7              continuing to develop and administer the GBG program for

8              GBG's benefit when, in fact defendants' were engaged in efforts

9              to misappropriate the program for their own benefit.

10

11    91.   As a result of defendants' breach of their respective fiduciary duties

12    GBG has been damaged in an amount not less than $10,000,000. In addition, as a

13    result of defendants' breach of their fiduciary duties defendants have reaped unjust

14    gains and secret profits which are the property of GBG in an amount according to

15    proof.

16

17    92.   Defendants' actions in breach of their respective fiduciary duties to GBG

18    were undertaken with fraud, malice or oppression, or with a conscious disregard of

19    the rights of GBG, and, therefore, GBG is entitled to an award of exemplary and

20    punitive damages against defendants, and each of them, in an amount according to

21    proof.

22

23    ## SEVENTH CLAIM FOR RELIEF

24    ### (Conversion against All Defendants)

25

26    93.   GBG refers to and incorporates by reference the allegations stated in

27    paragraphs 1 through 92 above as though fully set forth herein.

28

-35-
PLAINTIFF GLOBAL BENEFITS GROUP, INC.'S COMPLAINT

BARGER & WOLEN LLP
833 W. FIFTH ST.
FORTY-SEVENTH FLOOR
LOS ANGELES, CA 90071
(213) 680-2800

1      94.    Pursuant to the agreements executed by defendants, defendants, and each
2 of them, agreed to represent and act on behalf of GBG and as the agents and
3 representatives of GBG with respect to the GBG China insurance program. By doing
4 so, defendants, and each of them, agreed to act in a fiduciary capacity in furtherance
5 of the interests of GBG and to protect the property and contractual relations of GBG.

7      95.    From September 2008 through June 2009 defendants, and each of them,
8 represented and promised that they were acting in the best interests of GBG and
9 continuing to develop and administer the GBG program for GBG's benefit.

11     96.    Contrary to defendants' representations, throughout this period
12 defendants, and each of them, were engaged in efforts to convert and misappropriate
13 all aspects of the GBG China program for their own benefit.

15     97.    Defendants' acts of misappropriation included the conversion of the
16 proprietary trade secrets of GBG, including policyholder lists and producer lists and
17 information concerning the business relationships existing between GBG and its
18 policyholders and producers.

20     98.    Defendants' acts of misappropriation included the assumption of the
21 contractual and other rights enjoyed by GBG under its relationships with CCIC and
22 the reinsurers involved in the GBG China insurance program.

24     99.    Defendants' acts of conversion included the failure to pay to GBG
25 premium collected on GBG's behalf from policyholders participating in the GBG
26 China insurance program.

-36-

1      100. As a result of defendants' acts of conversion, GBG has been damaged in
2 an amount not less than $10,000,000. In addition, as a result of defendants' breach of
3 their fiduciary duties defendants have reaped unjust gains and secret profits which are
4 the property of GBG in an amount according to proof.

5

6      101. Defendants' acts of conversion were undertaken with fraud, malice or
7 oppression, or with a conscious disregard of the rights of GBG, and, therefore, GBG
8 is entitled to an award of exemplary and punitive damages against defendants, and
9 each of them, in an amount according to proof

10

11                   **EIGHTH CLAIM FOR RELIEF**

12 **(Conversion of Proprietary Data and Trade Secrets and against All Defendants)**

13

14      102. GBG refers to and incorporates by reference the allegations stated in
15 paragraphs 1 through 101 above as though fully set forth herein.

16 .

17      103. Pursuant to the agreements executed by defendants, defendants, and each
18 of them, agreed to represent and act on behalf of GBG and as the agents and
19 representatives of GBG with respect to the GBG China insurance program. By doing
20 so, defendants, and each of them, agreed to act in a fiduciary capacity in furtherance
21 of the interests of GBG and to protect the property and contractual relations of GBG.
22 As part of those duties defendants, and each of them, were subject to contractual and
23 common law duties obligations to maintain the confidentiality of the proprietary,
24 trade secret information of GBG.

25

26      104. From September 2008 through the present defendants, and each of them,
27 have acted in violation of these duties by making use of and disclosing to third parties
28 including London Life and CCIC the proprietary, trade secret information of GBG in

-37-

BARGER & WOLEN LLP
633 W. FIFTH ST.
FORTY-SEVENTH FLOOR
LOS ANGELES, CA 90071
(213) 680-2800

1 furtherance of defendants' efforts to misappropriate and convert the GBG Chinese
2 insurance program. Such information included, but was not limited to, policyholder
3 lists, producer lists, and information concerning the business relationships existing
4 between GBG and its policyholders and producers, and information concerning the
5 relationships among GBG, CCIC and the reinsurers participating in the GBG China
6 insurance program.

8     105.  Defendants' use and/or dissemination of the confidential, proprietary,
9 trade secrets of GBG has caused, and continues to cause, irreparable harm to GBG for
10 which there is no adequate remedy at law and for which damages will be difficult to
11 ascertain with certainty. GBG therefore requests that Defendants be enjoined from
12 making use of or disseminating such confidential, proprietary, trade secret
13 information.

15     106.  As a result of defendants' breach of their duty to maintain the
16 confidentiality of the proprietary, trade secret information of GBG, GBG has been
17 damaged in an amount according to proof. In addition, as a result of defendants'
18 breach of their duty to maintain the confidentiality of the proprietary, trade secret
19 information of GBG, defendants have reaped unjust gains and secret profits which are
20 the property of GBG in an amount according to proof.

22     107.  Defendants' actions in breach of their duties to maintain the
23 confidentiality of the proprietary, trade secret information of GBG were undertaken
24 with fraud, malice or oppression, or with a conscious disregard of the rights of GBG,
25 and, therefore, GBG is entitled to an award of exemplary and punitive damages
26 against defendants, and each of them, in an amount according to proof.

-38-

1

## NINTH CLAIM FOR RELIEF

2

### (Fraud and Concealment against All Defendants)

3

4      108. GBG refers to and incorporates by reference the allegations stated in

5   paragraphs 1 through 107 above as though fully set forth herein.

6

7      109. Pursuant to the agreements executed by defendants, defendants, and each

8   of them, agreed to act as the agents and representatives of GBG with respect to the

9   GBG China insurance program. By doing so, defendants, and each of them, were

10  legally obligated to truthfully represent to GBG the nature of their activities with

11  respect to the GBG China insurance program.

12

13     110. Defendants, and each of them, have breached their duty by conspiring to

14  misappropriate and misappropriating for their own benefit the GBG China insurance

15  program that defendants, and each of them, promised to develop and maintain on

16  GBG's behalf and for GBG's benefit.

17

18     111. In furtherance of that conspiracy from September 2008 through June

19  2009 defendants, and each of them, falsely represented that they were acting in the

20  best interests of GBG and continuing to develop and administer the GBG China

21  insurance program for GBG's benefit. These representations included, but were not

22  limited to, those representations stated at paragraphs 28 through 39 above.

23

24     112. GBG believed defendants' representations and relied on them in

25  allowing defendants to (i) continue in their respective positions with to the

26  development and administration of the GBG China program, (ii) have continued

27  access to GBG's systems as located at GBG's California corporate headquarters, (iii)

28  have continued responsibility for securing the renewal of GBG China program

-39-

BARGER & WOLEN LLP
633 W. FIFTH ST.
FORTY-SEVENTH FLOOR
LOS ANGELES, CA 90071
(213) 680-2800

1  policies, (iv) have continued responsibility for renewal of GBG's agreements with
2  CCIC, (v) have continued responsibility for renewal of the reinsurance agreements
3  applicable to the GBG China program, and (vi) have continued responsibility for the
4  collection of premium on GBG China program accounts.

6  113.  As a result of defendants' fraud GBG has been damaged in an amount
7  not less than $10,000,000.  In addition, as a result of defendants' breach of their
8  fiduciary duties defendants have reaped unjust gains and secret profits which are the
9  property of GBG in an amount according to proof.

11  114.  Defendants' actions in breach of their respective fiduciary duties to GBG
12  were undertaken with fraud, malice or oppression, or with a conscious disregard of
13  the rights of GBG, and, therefore, GBG is entitled to an award of exemplary and
14  punitive damages against defendants, and each of them, in an amount according to
15  proof.

## TENTH CLAIM FOR RELIEF

### (Interference with Contract against All Defendants)

20  115.  GBG refers to and incorporates by reference the allegations stated in
21  paragraphs 1 through 114 above as though fully set forth herein.

23  116.  Defendants, and each of them, agreed to represent and act on behalf of
24  GBG and as the agents and representatives of GBG with respect to the GBG China
25  insurance program.

-40-

BARGER & WOLEN LLP
833 W. FIFTH ST.
FORTY-SEVENTH FLOOR
LOS ANGELES, CA 90071
(213) 680-2800

1        117. From September 2008 through June 2009 defendants, and each of them,
2    represented and promised that they were acting in the best interests of GBG and
3    continuing to develop and administer the GBG program for GBG's benefit.
4
5        118. Contrary to defendants' representations, throughout this period
6    defendants, and each of them, were engaged in efforts to convert and misappropriate
7    all aspects of the GBG China program for their own benefit.
8
9        119. As part of their efforts to convert and misappropriate all aspects of the
10    GBG China insurance program, defendants, and each of them, intentionally and/or
11    negligently interfered with GBG's insurance contacts with (i) GBG China insurance
12    program policyholders, (ii) GBG China insurance program producers, (iii) CCIC, and
13    (iv) reinsurers participating in the GBG China insurance program.
14
15        120. In addition, as part of his efforts to convert and misappropriate all
16    aspects of the GBG China insurance program, defendant Khadivi intentionally and/or
17    negligently interfered with GBG's agreements with Hopkins, Zhang and STK.
18
19        121. As a result of defendants' interference with these contractual
20    relationships, GBG has been damaged in an amount according to proof.
21
22        122. Defendants' interference with these contractual relationships was
23    undertaken with fraud, malice or oppression, or with a conscious disregard of the
24    rights of GBG, and, therefore, GBG is entitled to an award of exemplary and punitive
25    damages against defendants, and each of them, in an amount according to proof
26
27
28

BARGER & WOLEN LLP
633 W. FIFTH ST.
FORTY-SEVENTH FLOOR
LOS ANGELES, CA 90071
(213) 680-2800

PLAINTIFF GLOBAL BENEFITS GROUP, INC.'S COMPLAINT

1

## ELEVENTH CLAIM FOR RELIEF

2

### (Interference with Prospective Business Advantage against All Defendants)

3

4      123.   GBG refers to and incorporates by reference the allegations stated in

5   paragraphs 1 through 122 above as though fully set forth herein.

6

7      124.   Defendants, and each of them, agreed to represent and act on behalf of

8   GBG and as the agents and representatives of GBG with respect to the GBG China

9   insurance program.

10

11      125.   From September 2008 through June 2009 defendants, and each of them,

12   represented and promised that they were acting in the best interests of GBG and

13   continuing to develop and administer the GBG program for GBG's benefit.

14

15      126.   Contrary to defendants' representations, throughout this period

16   defendants, and each of them, were engaged in efforts to convert and misappropriate

17   all aspects of the GBG China program for their own benefit.

18

19      127.   As part of their efforts to convert and misappropriate all aspects of the

20   GBG China insurance program defendants, and each of them, intentionally and/or

21   negligently interfered with GBG's prospective business relationships with (i) persons

22   who, but for defendants' conduct, would have purchased coverage under the GBG

23   China insurance program policyholders, (ii) GBG China insurance program

24   producers, (iii) CCIC, and (iv) reinsurers participating in the GBG China insurance

25   program.

26

27      128.   In addition, as part of his efforts to convert and misappropriate all

28   aspects of the GBG China insurance program, defendant Khadivi intentionally and/or

-42-

BARGER & WOLEN LLP
633 W. FIFTH ST.
FORTY-SEVENTH FLOOR
LOS ANGELES, CA 90071
(213) 680-2800

1  negligently interfered with GBG's prospective business relationships with with
2  Hopkins, Zhang and STK.

3

4    129.  As a result of defendants' interference with these prospective business
5  relationships, GBG has been damaged in an amount according to proof.

6

7    130.  Defendants' interference with these prospective business relationships
8  was undertaken with fraud, malice or oppression, or with a conscious disregard of the
9  rights of GBG, and, therefore, GBG is entitled to an award of exemplary and punitive
10  damages against defendants, and each of them, in an amount according to proof.

11

12              **TWELVTH CLAIM FOR RELIEF**

13  **(Trade Mark Infringement against All Defendants – Violation of Lanham Act)**

14

15    131.  GBG refers to and incorporates by reference the allegations stated in
16  paragraphs 1 through 131 above as though fully set forth herein.

17

18    132.  GBG is a well known company in the business of marketing and
19  servicing in the United States and throughout the world, including China, life
20  insurance, accident insurance, short term and long term disability and health
21  insurance products. These products have, during the last 20 years, been marketed
22  under trade names including, but not limited to "Global Benefits International,"
23  "Global Benefits Group," "GBG," "TieCare International," "TieCare," and variations
24  thereof, along with other related trade and service marks.

25

26    133.  At all times since July 29, 2008, the trade/service mark "TieCare
27  International, Inc" has been a registered trade/service mark under United States
28  Patent & Trademark Office registration number 3475502 and is owned by GBG.

-43-

1      134. GBG has devoted substantial time, effort and resources to the
2   development and promotion of each of these marks throughout the United States and
3   in foreign countries, including China. As a result of those efforts, the public has
4   come to know and rely on GBG as a source of high quality life insurance, accident
5   insurance, short term and long term disability and health insurance products. GBG's
6   marks therefore have achieved a distinctive and valuable reputation and degree of
7   good will.
8
9      135. Defendants, and each of them, have used and are continuing to use
10  GBG's marks in the conduct of their competing business enterprise and in the sale of
11  competing products. This use has occurred on documents and in electronic form in
12  communications available in the United States and in international markets.
13
14     136. By continuing to use these marks and sell competing products
15  thereunder without the permission of GBG, defendants are likely to cause confusion,
16  mistake, or deceive the public into believing the competing products they are selling
17  are associated with GBG.
18
19     137. Defendants use of the trade names and marks "Global Benefits
20  International," "Global Benefits Group," "GBG," "TieCare International," "TieCare,"
21  and variations thereof, along with other related trade and service marks, to promote
22  their services constitutes trade/service mark infringement and unfair competition in
23  violation of §43 of the Lanham Act, 15 U.S.C. §1125(a).
24
25     138. Defendants' use of the trade names and marks "Global Benefits
26  International," "Global Benefits Group," "GBG," "TieCare International," "TieCare,"
27  and variations thereof, along with other related trade and service marks, to promote
28

-44-
PLAINTIFF GLOBAL BENEFITS GROUP, INC.'S COMPLAINT

1  their services has diluted the marks of GBG in further violation of §43 of the Lanham
2  Act, 15 U.S.C. §1125(a).

3

4     139.   Defendants' use of the registered mark "TieCare International, Inc." and
5  forms thereof constitutes a violation of §32 of the Lanham Act, 15 U.S.C. §1114 and
6  a violation of GBG's rights of ownership.

7

8     140.   Defendants' use of the marks of GBG, including the registered mark
9  "TieCare International, Inc.", has caused, and continues to cause, irreparable harm to
10  the business and good will GBG has established in the international insurance
11  community in the United States. In addition, defendants' use of the marks of GBG,
12  including the registered mark "TieCare International, Inc.," has caused, and continues
13  to cause, irreparable harm to the business of GBG by hampering its ability to sell
14  products in the same channel as defendants. There is no adequate remedy at law for
15  these defendants' actions, and damages will be difficult to ascertain with certainty.

16

17     141.   Based on these allegations, GBG requests that defendants, and each of
18  them, be enjoined from making use of the names, logos and marks of GBG including,
19  but not limited to, Global Benefits Group, Inc., Global Benefits, Global Benefits
20  International, TieCare International, TieCare, and all variations thereof.

21

22     142.   As a result of defendants' actions GBG has incurred and will continue to
23  incur damages in an amount according to proof.

24

25     143.   Defendants' actions were undertaken with fraud, malice or oppression,
26  or with a conscious disregard of the rights of GBG, and, therefore, GBG is entitled to
27  an award of exemplary and punitive damages against defendants, and each of them,
28  in an amount according to proof.

-45-

BARGER & WOLEN LLP
633 W. FIFTH ST.
FORTY-SEVENTH FLOOR
LOS ANGELES, CA 90071
(213) 680-2800

PLAINTIFF GLOBAL BENEFITS GROUP, INC.'S COMPLAINT

1

# THIRTEENTH CLAIM FOR RELIEF

2

## (Unfair Competition against All Defendants)

3

4      144.   GBG refers to and incorporates by reference the allegations stated in

5   paragraphs 1 through 143 above as though fully set forth herein.

6

7      145.   Defendants, and each of them, agreed to represent and act on behalf of

8   GBG and as the agents and representatives of GBG with respect to the GBG China

9   insurance program.

10

11     146.   From September 2008 through June 2009 defendants, and each of them,

12   represented and promised that they were acting in the best interests of GBG and

13   continuing to develop and administer the GBG program for GBG's benefit.

14

15     147.   Contrary to defendants' representations, throughout this period

16   defendants, and each of them, were engaged in efforts to convert and misappropriate

17   all aspects of the GBG China program for their own benefit as more fully described

18   above.

19

20     148.   All of these activities were undertaken by defendants, and each of them,

21   in an effort to gain an unfair advantage in the marketing of a product competitive

22   with the GBG China insurance product.

23

24     149.   As a result of defendants' acts of unfair competition, GBG has been

25   damaged in an amount according to proof.

26

27     150.   Defendants' acts of unfair competition were undertaken with fraud,

28   malice or oppression, or with a conscious disregard of the rights of GBG, and,

-46-

PLAINTIFF GLOBAL BENEFITS GROUP, INC.'S COMPLAINT

1  therefore, GBG is entitled to an award of exemplary and punitive damages against

2  defendants, and each of them, in an amount according to proof.

3

4                    **FOURTEENTH CLAIM FOR RELIEF**

5       **(Accounting and Constructive Trust against Hopkins, Zhang and STK)**

6

7       151.  GBG refers to and incorporates by reference the allegations stated in

8  paragraphs 1 through 150 above as though fully set forth herein.

9

10      152.  Defendants Hopkins, Zhang and STK were, pursuant to their contractual

11  and other obligations with GBG, responsible for the accounting for and collection of

12  premium owed to GBG on policies issued under the GBG China insurance program.

13

14      153.  From September 2008 through June 2009 Hopkins, Zhang and STK

15  represented that such premium was being collected and that it would be accounted for

16  and paid.  To date, and despite repeated efforts, since September 2008 no accounting

17  has been received by GBG and no premium has been paid to GBG.

18

19      154.  GBG requests that the court order an accounting of all GBG China

20  insurance program accounts and that a constructive trust be declared over all funds

21  collected by Hopkins, Zhang and/or STK on GBG's behalf.

22

23                    **FIFTEENTH CLAIM FOR RELIEF**

24             **(Injunctive Relief against All Defendants)**

25

26      155.  GBG refers to and incorporates by reference the allegations stated in

27  paragraphs 1 through 155 above as though fully set forth herein.

28

-47-

BARGER & WOLEN LLP
633 W. FIFTH ST.
FORTY-SEVENTH FLOOR
LOS ANGELES, CA 90071
(213) 680-2800

1    156.   Based on the ongoing and continuing activities and breaches of

2   Defendants, and each of them, as set forth above, GBG is suffering ongoing,

3   continuing and irreparable harm for which damages will not be an adequate remedy

4   and for which it will be difficult to ascertain damages with certainty.

5

6    157.   GBG therefore requests that the Court issue a preliminary and a

7   permanent injunction preventing Defendants, and each of them, from individually,

8   jointly, or in conjunction with any third party, including CCIC and/or London Life,

9   engaging in the following activities.

10

11       (a)   Failing to immediately restore to GBG all premium amounts

12             collected by Defendants on polices insured under the GBG China

13             program;

14

15       (b)   Making use of the names, logos and marks of Global Benefits

16             Group, Inc. including, but not limited to, Global Benefits Group,

17             Inc., Global Benefits, Global Benefits International, TieCare

18             International, TieCare, and all variations thereof;

19

20       (c)   Making use of United States Registered Mark "TieCare

21             International," all variations thereof, and any and all marks

22             containing this service mark and/or any variations thereof;

23

24       (d)   Making use of or accessing the policyholder, customer and

25             producer lists, rating information and all other trade secrets and

26             data related to the GBG China program;

27

28       (e)   Making use of or accessing the computer systems of GBG;

-48-

BARGER & WOLEN LLP
833 W. FIFTH ST.
FORTY-SEVENTH FLOOR
LOS ANGELES, CA 90071
(213) 680-2800

(f)   Directing internet traffic targeted to web sites controlled by GBG to any and all internet sites owned by, controlled by, or in any way affiliated with defendants, and each of them;

(g)   Making use of the proprietary documents of GBG including, but not limited to, application forms, policy forms, marketing materials, claim forms;

(h)   Representing that defendants are representing or in any way affiliated with GBG in the conduct defendants' competitive business, including any efforts to solicit the renewal of any policy, the sale of any new policy, or the solicitation of any business relationship with a producer, insurer or reinsurer.

(i)   Marketing any insurance program competitive with the GBG China insurance program.

## PRAYER FOR RELIEF

Based on the forgoing allegations, GBG prays judgment against all Defendants as follows:

1.   For compensatory damages in an amount to be proven at trial;

2.   For punitive damages in an amount appropriate to punish Defendants and to deter others from engaging in similar conduct;

3.   For an accounting;

4.   For issuance of a preliminary and permanent injunction as described herein;

-49-

BARGER & WOLEN LLP
633 W. FIFTH ST.
FORTY-SEVENTH FLOOR
LOS ANGELES, CA 90071
(213) 680-2800

5. For costs of suit incurred;

6. For attorneys' fees;

7. For such other and further relief as the Court deems just and proper.

Dated: June 29, 2009                          BARGER & WOLEN LLP

                                              By: _____
                                                  RICHARD G. DE LA MORA
                                                  RICHARD B. HOPKINS, II
                                                  Attorneys for Plaintiff Global
                                                  Benefits Group, Inc.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial as provided by Rule 38(a) of the Federal Rules of Civil Procedure.

Dated: June 29, 2009                          BARGER & WOLEN LLP

                                              By: _____
                                                  RICHARD G. DE LA MORA
                                                  RICHARD B. HOPKINS, II
                                                  Attorneys for Plaintiff Global
                                                  Benefits Group, Inc.

-50-

PLAINTIFF GLOBAL BENEFITS GROUP, INC.'S COMPLAINT

# EXHIBIT A

# SALES REPRESENTATIVE AGREEMENT

This Agreement is made between GLOBAL BENEFITS GROUP INC. (hereinafter referred to as GBG), a Delaware corporation with its principal place of business at 27092 Burbank, Foothill Ranch, California, 92610, USA and **Patrick J. Hopkins,** an independent Contractor, with a principal place of business at Sunset View Towers, 2230 Roxas Blvd., Pasay 1300 Metro-Manila, Philippines (hereinafter referred to as Contractor).

**Whereas** GBG is an insurance broker and provider of international financial services representing different insurance and reinsurance companies, and investment companies not restricted to any one country; and

**Whereas** GBG has identified certain specific niches for the marketing of its products and services, and

**Whereas,** GBG wishes to expand its presence in those market niches, and

**Whereas** GBG wishes to retain the services of Contractor for the expansion of its marketing activities, and

**Whereas,** GBG has established certain policies and procedures regarding the manner in which Contractor shall represent GBG,

**NOW THEREFORE,** in consideration of the mutual promises, conditions and covenants as set forth below, the parties agree as follows:

**1.  Basic Agreement.**

Contractor agrees to act as a Regional Vice President for the sales and marketing of the products and services marketed by GBG.

While this Agreement is in effect, Contractor agrees to use his best efforts to develop the business of GBG, in accordance with the policies and procedures developed by GBG for its business.

For the purposes of this Agreement, the use of "GBG" shall be understood by the parties to include the subsidiaries and affiliates of GBG, including, TieCare International, TieCare LTD, TieCare Financial Services, and any other affiliates or subsidiaries that GBG may have or establish to further its business goals.


EXHIBIT A

Global Benefits, Inc.
SALES REPRESENTATIVE AGREEMENT

**2. Term of Agreement.**

This Agreement shall commence on the date executed by the parties, and continue in effect unless terminated as provided for herein.

**3. Termination of Agreement**

This Agreement will terminate upon the occurrence of any of the following events:

a. This Agreement may be terminated by GBG for a breach of a material provision of this contract. Such termination shall be effect immediately upon the receipt of written notice, sent via overnight mail service, to Contractor's business address.

b. Contract may be terminated by mutual agreement.

c. This Agreement may be terminated by either party giving 30 days written notice to the other, via overnight mail service. In such event the contract will be deemed to me terminated on the 30th day following the date of receipt of such notice by the non-terminating party.

In the event of termination in accordance with this paragraph, all obligations of the parties to the other, excluding those obligations which by their nature survive termination, as more specifically described in Sections 9, 14, and 15 of this Agreement, shall be null and void.

**4. Responsibilities of Contractor.**

Contractor agrees to act as a Regional Vice President of GBG for the sale of the products and services offered by GBG while this contract is in effect. Such representation shall consist of Contractor's efforts to increase the sales volume of GBG's products and services, and to provide such administrative and client service as GBG may require by its policies and procedures.

Contractor recognizes that GBG may require the maintenance of certain records and the filing of certain reports to GBG, and the reporting of Contractor's activities on behalf of GBG, and Contractor agrees to maintain such records and provide such reports in accordance with the procedures GBG sets up for such reporting.

Contractor shall be solely responsible for all his business expenses, including but not limited to travel, entertainment, office rent, signs, telephone, education, dues, subscriptions, licenses, etc., and shall receive no remuneration or reimbursement of any nature whatsoever other than the commissions and renewal fees described on Exhibit A.

Global Benefits, Inc.
SALES REPRESENTATIVE AGREEMENT

Contractor may, at contractor's own expense, use employees or subcontractors, as Contractor deems necessary to perform the services required of contractor by this agreement. GBG may not control, direct, or supervise contractor's employees or subcontractors in the performance of those services. Actions of the employees or subcontractors of Contractor are the responsibilities of the Contractor, who must ensure that such actions comply with the requirements of this contract. Contractor is also responsible to assure that all subcontractors or employees are in full compliance with all applicable licensing and regulatory requirements. Failure of an employee or subcontractor to comply with provisions of this contract is considered breach of this contract by the contractor.

If, pursuant to this paragraph, Contractor utilizes a sub contractor or employee for the purpose of assisting Contractor in the sales and marketing of products or services offered by GBG and Contractor under this Agreement, and provided that said employee or contractor is a licensed representative of GBG, (or whose duties require such a license), then Contractor acknowledges that Contractor will employ said sub contractor in accordance with the following provisions;

a. Sub contractor shall be paid in accordance with the GBG's then existing commissions schedule for the position filled by sub contractor, and shall have executed a then current copy of GBG's standard representative's contract.

b. Contractor shall have received written approval from GBG regarding the employment of said sub contractor, such approval to include a statement of all compensation to be paid sub contractor;

c. It shall be the responsibility of GBG to compute and pay sub contractors in accordance with the agreed upon compensation schedule for each individual sub contractor. Contractor pay such sub contractor(s) directly without the express written consent of the president of GBG or his designee, which consent shall not be unreasonably withheld. This provision shall also apply to the payment of any vested commission due sub Contractor upon the termination of a sub contractor's Agreement with GBG.

d. The parties acknowledge that Contractor currently employs certain employees or sub contractors. Upon the execution of this Agreement, GBG approves the hiring of said personnel and this Agreement shall serve as written approval for the compensation arrangement between said employee and Contractor, provided, however, that within 30 days of the execution of this Agreement, Contractor shall provide GBG with a written explanation of any such compensation plans then in

- 3 -

Global Benefits, Inc.
SALES REPRESENTATIVE AGREEMENT

effect. Any alteration of said compensation Agreement after the execution of this Agreement requires the approval of GBG.

**5. Responsibilities of GBG**

GBG agrees to provide Contractor with a list of products and services offered by GBG, with such information as may be necessary for Contractor to offer such products and services to potential clients.

GBG further agrees to process any and all business submitted by Contractor to GBG in a timely manner, and to provide for the timely payment of commissions and other payments, if any, to Contractor, as required by Paragraph 9 this Agreement.

GBG also agrees to provide marketing and administrative support to Contractor, in a manner and amount as shall be determined by GBG.

GBG further agrees to use its best efforts to maintain a portfolio of competitive products for sale by Contractor in GBG markets.

**6. Method of Performing Services/Time Devoted to Work**

Contractor will determine the method, details, and means of performing the above-described services in the best interests of the GBG, and will devote such time to representing GBG as Contractor, in his sole discretion, shall decide.

Nothing in this paragraph shall be construed to diminish Contractor's obligations to maintain such records and file such reports as GBG may require pursuant to paragraph 5 of this Agreement.

**7. Status of Contractor.**

Contractor enters into this agreement, and will remain throughout the term of the agreement, as an independent contractor. Contractor agrees that in discharging his responsibilities under this Agreement, he is not operating as an employee, partner, agent, or principal of GBG. Contractor agrees he is not entitled to the rights or benefits afforded GBG's employees, including disability or unemployment insurance, workers' compensation, medical insurance, sick leave, or any other employment benefit, and Contractor is responsible for providing disability, employment, and other insurance, workers' compensation, training, permits, and licenses for himself and for his employees and subcontractors, at his own expenses.

- 4 -

54

Global Benefits, Inc.
SALES REPRESENTATIVE AGREEMENT

GBG may from time to time provide the administrative facilities for group benefits for the contractors on a voluntary basis for the benefit of the contractors having the advantage of group purchases.

Contractor is responsible for paying his own taxes, including but not limited to US Federal Insurance Contributions, US Social Security, US Federal and state income taxes, any applicable US and state sales taxes, and any foreign taxes.

## 8. Exclusive Relationship

Contractor recognizes the unique nature of GBG's business, and acknowledges that the individual contacts and marketing concepts of GBG are proprietary to GBG, and essential to the continued success of GBG. For that reason, while this agreement is in effect, and in the event of termination, for the time periods specified in paragraph 11 below, Contractor agrees that he shall not represent in any way, directly or indirectly, including, but not limited to, as an employee, consultant, representative, owner, partner, stockholder, or otherwise, any other individual, partnership, insurance company, investment firm, broker, dealer, or similar entity, that is engaged in any business that is competitive with the business of GBG. This prohibition shall not extend to Contractor's ownership, for investment purposes, of stock in a publicly traded company or mutual fund.

In the event that Contractor wishes to represent a firm or individual that Contractor believes is not in competition with GBG, then Contractor shall require written permission from GBG to represent such individual or entity. Such request shall be in writing and shall contain the details of the products or services that Contractor wishes to represent. GBG shall respond to such written request within 30 days, and shall have the right to deny such right to Contractor in its sole discretion.

## 9. Confidential Information-Non-Disclosure

During and after the term of this Agreement, Contractor agrees not to communicate, divulge or use for the benefit of Contractor, or any other person or entity, the business secrets or methods, business policies or forms, reports, lists or names of customers, or of former and/or prospective customers of GBG, or any other confidential information of GBG of any type or description, except as expressly permitted herein. Contractor agrees that Contractor will not take, carry away or use in any manner any records of GBG other than for the benefit of GBG. Any written, printed, graphic, or electronically or magnetically recorded information furnished by customer for Contractor's use in obtaining, servicing and maintaining GBG clients are the sole property of GBG. This proprietary information includes, but is not limited to, customer requirements,

- 5 -

Global Benefits, Inc.
SALES REPRESENTATIVE AGREEMENT

customer lists, marketing information, and information concerning customer's employees, products, services, prices, operations and subsidiaries. Contractor will keep this confidential information in the strictest confidence, and will not disclose it by any means to any person except with GBG's approval and only to the extent necessary to perform the services under this agreement. This prohibition also applies to Contractor's employees, agents, and subcontractors. On termination of this agreement, Contractor will return any confidential information in his possession to GBG.

Contractor will have access only to GBG System Information and Account Information which pertains to the accounts of his or her clients, and not to general GBG information and Account Information with respect to any other policyholders of GBG. Contractor understands and agrees that the GBG System Information and Account Information is provided to him/her exclusively for use in connection with the business and affairs of GBG, and agrees to treat the GBG System Information and Account Information as confidential, to hold it in trust and confidence for the sole purpose of servicing the client to whom any particular GBG System Information and Account Information relates, and not to disclose or use it for any purpose unrelated to servicing a particular GBG client.

Contractor hereby expressly agrees not to utilize the GBG System Information or Account Information in connection with advertising or sales material of any kind, and not to disclose it to anyone other than the GBG client to whom the particular GBG System Information or Account Information relates, including any potential sales prospects. Further, Contractor agrees to take such steps as GBG shall reasonably request to aid it in protecting the confidential and proprietary natures of the GBG System Information and Account Information.

Contractor agrees not to utilize any written material which has been produced from the GBG System Information or Account Information with a GBG without first obtaining prior written approval of the form of such material from the Compliance Officer of GBG. In order to facilitate compliance with this Section, once the form of such material has been approved in writing by the President of GBG or his designee, such statement or other material may be used with various clients without the need to submit each individual correspondence or other material for written approval.

Contractor further agrees to fully indemnify and hold GBG harmless with respect to any and all claims or losses which may result from Contractor's actions in the acquisition or utilization of the GBG System Information or Account Information.

Contractor agrees to discontinue electronic access to the GBG System and to all Account Information pursuant to this Agreement, and to destroy or return to the GBG all copies, reproductions, notes, papers or other materials either provided by the GBG or created by

56

Global Benefits, Inc.
SALES REPRESENTATIVE AGREEMENT

Contractor from the GBG System or the Account Information within 14 calendar days, or as soon as practicable, of any request made by the GBG during Contractor's tenure and immediately upon termination of Contractor's tenure from GBG for any reason.

This paragraph shall remain in effect even after Contractor's status with GBG is terminated by either Contractor or the GBG for any reason, until such time as a prior written release of this Agreement is signed by the GBG. In the event that Contractor breaches any of the provisions of this Agreement, Contractor agrees that the GBG shall be entitled to an injunction restraining Contractor or his or her employees, agents or representatives from disclosing the GBG System Information or the Account Information, or from rendering any services to any person, corporation, association or other entity to whom such GBG System Information or the Account Information has been disclosed. This does not prohibit the GBG from pursuing any other remedies available to it for such breach or threatened breach, including the recovery of damages. Further, if GBG employs an attorney to assist it in protecting its rights pursuant to this Agreement, Contractor agrees to pay the GBG's reasonable attorney's fees, legal expense, and other expenses should judgement against the contractor be entered in a court of competent jurisdiction or in the appropriate administrative forum. Conversely, should the contractor not be found to have breached provisions of this contract TFS will be liable to pay contractor's reasonable attorney's fees, legal expense and other expenses.

## 10. Territory

Contractor shall represent GBG in the territory described in Exhibit B, which territory may be modified from time to time by GBG. Any such modification, once received in writing by Contractor, shall become an integral part of this Agreement.

Contractor acknowledges that this grant of territory by GBG is not exclusive, and is not intended to preclude GBG from entering into brokerage agreements, or other distribution agreements, with other individuals or entities for the representation of GBG in a portion of the territory outlined in Exhibit B. Such appointment, if any, by GBG, shall not require any payment of commissions, overrides, or other payments to Contractor on business produced by such additional distribution channels.

## 11. Compensation

Contractor's sole compensation under this Agreement shall be commissions and fees according to the schedules set forth in Exhibit A which is attached hereto and incorporated herein by reference. Commissions and fees specified in Exhibit A shall be earned by Contractor only upon

- 7 -

Global Benefits, Inc.
SALES REPRESENTATIVE AGREEMENT

GBG having earned its commissions either by the payment of premium payments by the client, or the receipt of commissions payments by a product provider.

All commissions and fees earned by Contractor shall be paid to contractor by the 15th of each month, for all commissions and fees earned in the preceding month.

GBG is hereby authorized by Contractor to deduct from commissions due the amount of any commission paid to Contractor in connection with any payment or amount that GBG refunds to Contractor's clients.

In the event that Contractor receives advances or draws against commissions earned pursuant to this Agreement, such advances shall be the subject of a separate written agreement between the parties. In the absence of such written agreement pertaining to amounts advanced, if any, then GBG shall have the right to credit any commissions earned pursuant to this Agreement against such advances or draws.

If a group or individual client of Contractor requests in writing the transfer of an account from Contractor to another GBG contractor, Contractor will retain all commission amounts previously paid, will receive full commissions due to the end of the current quarter, and will receive 50 percent commission thereafter, until the termination of this Agreement.

Contractor shall receive no fringe benefits under this Agreement, including but not limited to insurance benefits, disability income, paid vacation, expense reimbursement or retirement benefits unless otherwise provided for in this Agreement.

**12. Vested commissions**

In the event this Agreement is terminated, by either party, for any reason, and provided such termination takes place more than 24 months from the date of execution of this Agreement, then, in recognition of unique nature of GBG's business, and in consideration for Contractor's compliance with the non-compete provisions of paragraph 15, Contractor shall receive vested commissions as follows: (Contractor shall not be entitled to vested commissions until this Agreement has been in effect for 24 months.)

For every two calendar quarters that this Agreement was in effect, and provided that Contractor is in compliance with the non-compete provisions of Section 15 of this Agreement, Contractor shall receive one calendar quarter of vested commissions, up to a maximum of 20 quarters of vesting. For the products and services described below, vested commissions shall be equal to 50% of the commissions Contractor would have been entitled to while this Agreement was in effect.

Global Benefits, Inc.
SALES REPRESENTATIVE AGREEMENT

Vested commissions earned pursuant to this paragraph shall be earned by Contractor only upon GBG having earned its commissions, either by the payment of premium payments by the client, or the receipt of commissions payments by a product provider.

    a.  For group health insurance, group life insurance, and group LTD policies placed by Contractor prior to the termination of this Agreement, Contractor shall be vested on the amount of premium received for the most recent renewal period before termination of the contract. (Contractor is not vested on any commissions earned by GBG as a result of an increase in the premium paid by the client whether such increase is the result of an increase in coverage or an increase in premium rates.)

    b.  For investment plans in effect upon the termination of this Agreement, Contractor's vesting shall be based on the clients, and not the amount of money on deposit, or the amount of money contributed at the time of such termination. Commissions on such clients shall be calculated as if Contractor was still employed by GBG, and the appropriate vested commissions shall be paid on the full account value, and the full level of contribution, including increases and growth that occurs after termination.

       The parties acknowledge that the vested commissions earned by Contractor on investment plans described in b) above shall apply to trail commissions or asset based commissions as well as future contributions.

    c.  Vested commissions include commissions that constitute overrides on sub-contractors or sub-agents of Contractor.

    d.  For fees earned on products such as Tax Preparation, contractor shall not have any vested commission.

    e.  On individual health insurance and life insurance clients enrolled by Contractor or legally assigned to Contractor prior to the terminations of this Agreement, Contractor shall be vested in the annual amount of premium such clients paid for the most recent renewal period while the Agreement was in effect. (Contractor is not entitled to any commissions on any increases in the amount of premium paid by such clients subsequent to the termination of this Agreement.)

It is expressly acknowledged that for each individual or group client of GBG, only one Contractor, (or previous Contractor), can be vested at a time. Therefore, in the event that GBG assigns or transfers existing business to Contractor, or assents to such transfer or assignment,

Global Benefits, Inc.
SALES REPRESENTATIVE AGREEMENT

then on such business assigned or transferred, Contractor's vesting will begin after the payment of all previously existing vesting.

Upon the death of Contractor, vested commissions still due, if any, will be paid to the legal representative of Contractor's Estate, or the person that the legal representative designates in writing. In no event will GBG pay vested or accrued commissions to more than one person.

In the event that upon the termination of this Agreement there is money owed by Contractor to GBG, whether due to advances, draws, loans, or any other reason, then GBG shall have the right to withhold any vested commissions due until such money owned GBG has been repaid by the application of such vested commissions.

The provisions described above regarding vested commissions shall also apply in the event any portion of Contractor's territory is re-assigned by GBG.

**13. Indemnification.**

Contractor will indemnify and hold harmless GBG, its affiliates, any Partnership of which GBG or an affiliate is a general or limited partner, and their respective employees, agents, officers, directors, affiliates and successors, from and against any and all loss, cost, claims, or damage, including attorney's fees arising out of Contractor's breach of this Agreement.

**14. Provisions After Termination**

Upon termination of this Agreement in accordance with paragraph 3 above, the parties agree as follows:

    a. Promptly at the end of the 30 day notice period, GBG shall pay Contractor any commissions due and owing to Contractor as of the termination date of the Agreement.

    b. Within 30 days of the termination of this Agreement, Contractor shall return to GBG any training manual, procedures manuals, clients files, proprietary data and databases, and any other material related to the discharge of Contractor's responsibilities under this Agreement. Provided that there is no confidential or proprietary information involved, Contractor may retain for his own use any personal work product produced by Contractor during the period that this Agreement was in effect.

- 10 -

60

Global Benefits, Inc.
SALES REPRESENTATIVE AGREEMENT

   c. Contractor further acknowledges and agrees that all supplies, including but not limited to prospectuses, memoranda, visual aids, specimen plan forms, manuals, statistical and sales training and/or recruitment materials furnished by GBG to Contractor, are and shall be the property of GBG and shall also be returned promptly to GBG upon demand.

   d. Contractor shall remove from his office facilities, business cards, letterheads, and all other advertising or promotional material, any reference to GBG, or its affiliates or subsidiaries.

   e. Contractor shall continue to abide by the provisions of Sections 8, 9, 10, and 11, of this Agreement, as well as the non-compete provisions of Section 15.

   f. Subsequent to such termination GBG shall pay vested commissions due Contractor, if any, within 15 days of the end of each month, except that in the event such vested commissions are less than $1,000 per month, GBG reserves the right to pay such vested commissions quarterly, such payment being due within 15 days of the end of each calendar quarter.

### 15. Non-Competition

Contractor acknowledges that the marketing of GBG's products and services involves:

   a. Knowledge of the key individuals in the market niches that GBG pursues;

   b. Relationships with specified product providers, and knowledge of specific product provisions and features;

   c. Critical relationships with GBG clients, both groups and individuals;

   d. Relationships with professional organizations active in the market segments important to GBG;

   e. Business relationships with third party organizations who may sub contract, sponsor, recommend or otherwise engage in marketing activities with GBG;

   f. The development and maintenance of a high level of confidence and credibility in the international financial services marketplace, which is predicated on the proprietary knowledge, data bases, products, and expertise of GBG,

- 11 -

61

Global Benefits, Inc.
SALES REPRESENTATIVE AGREEMENT

g. A substantial investment of money and management effort by GBG in the development of GBG's business niche, the training and support of Contractor, and the promotion of Contractor's business;

In acknowledgement of the importance of the above factors in the business activities of GBG, Contractor agrees that upon the termination of this contract, by either party for any reason, Contractor shall be bound by the following restrictions regarding competition with GBG:

a. For a period of one year from the date of the termination of this Agreement, Contractor shall not:

1) sell or offer for sale, directly or indirectly, any financial services product or service to Americans living abroad, or other expatriates working in countries other than their native country, if that product or service is substantially similar to a product or service offered by GBG prior to such termination;

2) represent to Americans living abroad, or to other expatriates living in countries other than their native country, directly or indirectly, any of the insurance underwriters or investment firms represented by GBG or its affiliates, at any time during the 12 months prior to the termination of this Agreement.

b. From the date of the termination of this Agreement until the expiration of the period for which Contractor is to receive vested commissions under this Agreement, Contractor agrees not to:

1) enter into competition, directly or indirectly, with GBG, in any portion of the territory assigned to Contractor at the time of the termination of this Agreement.

2) replace any insurance contract, investment program, or financial services product or service, in place with a GBG group or individual client at the time of the termination of this Agreement, with any other insurance, investment, or financial services product.

In the event of the non-compliance of contractor with any aspect of this agreement not to compete, GBG shall be entitled to the following remedies;

a. The forfeiture by Contractor of the right to any vested commissions described in paragraph 11 above.

- 12 -

Global Benefits, Inc.
SALES REPRESENTATIVE AGREEMENT

    b.  Any commissions or other compensation earned by Contractor in violation of this
       non-compete provisions;

    c.  Any other remedies available to it by the operation of law, including but not limited
       to the granting of an injunction prohibiting Contractor from carrying our any
       activities in violation of this paragraph.

In the event that Contractor disputes GBG's conclusion that Contractor is in violation of this
non-compete provision, then Contractor may submit the matter to binding arbitration, utilizing
the procedures and services of the American Arbitration Association. In such event, Contractor
shall provide written notice to GBG of Contractor's intention to request such arbitration, and
such request shall include a description of Contractor's reason for disputing GBG's position. If
GBG has not responded to Contractor in a manner satisfactory to Contractor within 30 days of
receiving such notice from Contractor, the matter shall be referred to the American Arbitration
Association, and the parties agree to be bound by the decisions of said arbitrator.

It is expressly understood that such arbitration shall be limited to a finding of whether
Contractors is in violation of the non-compete provision of this agreement, and the arbitrator
shall have no jurisdiction to review the validity or reasonableness of said provision, or of any
other provisions of this Agreement, or to award or assess any damages or monetary awards to
either party.

Such arbitration shall take place at the facility nearest to the administrative offices of GBG, and
each party shall be responsible for their own costs in preparing for and attending such
arbitration. The cost of such arbitration that is assessed by the American Arbitration
Association shall be split equally by the parties.

In the event Contractor prevails in the Arbitration, GBG agrees to pay Contractor, all accrued
and unpaid commissions within 30 days of the receipt by GBG of Arbitrator's decision,

**16. Entire Agreement.**

This Agreement and the Exhibits attached hereto constitute the entire Agreement between the
parties with respect to the subject matter hereof and supersede any prior written or oral
representations relating thereto.

The parties acknowledge that Contractor may be required to enter into similar Agreements
with affiliates or subsidiaries of GBG, which Agreements may cover matters similar to those
dealt with herein. In the event such additional contracts are executed by the parties, nothing
therein shall be construed to alter any provision of this Agreement.

- 13 -

63

Global Benefits, Inc.
SALES REPRESENTATIVE AGREEMENT

### 17. Modification of Agreement.

GBG may from time to time modify this Agreement by giving written notice to Contractor of such modification. Such modifications shall be effective fifteen (15) days after date of proof of receipt by the contractor, and shall apply only to the activities of Contractor subsequent to such modification. In no event shall such modification reduce or eliminate vested rights already earned prior to such modification.

Any modification by GBG to the commission schedule annexed to this Agreement as Exhibit A shall be sent to Contractor by written notification, via overnight mail delivery. Any such modification shall take place 15 days from the date of such announcement, shall become apart of this Agreement, and such commission modification shall take effect only with respect to business submitted after the effective date of such notification.

### 18. No Waiver.

No waiver, express or implied, by GBG of a default by Contractor under this Agreement, shall constitute a waiver of any subsequent default; and following a waiver, express or implied, a demand for strict compliance thereafter need not be served on Contractor.

### 19. Partial Invalidity.

If any term, covenant, condition or provision of this Agreement is held by a court of competent jurisdiction to be invalid, void or unenforceable, the remainder of the provisions shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

### 20. Headings.

The paragraph headings contained in this Agreement are inserted for purposes of convenience of reference only and shall not affect the meaning or interpretation of this Agreement.

### 21. Interpretation and Definitions.

Unless otherwise provided in this Agreement, or unless the context otherwise requires, the following definitions and rules of construction shall apply herein:

   a. Number and Gender. In this Agreement the neuter **and masculine** gender include the feminine and masculine and the singular number includes the plural, and the word

- 14 -

64

Global Benefits, Inc.
SALES REPRESENTATIVE AGREEMENT

> "person" includes corporation, partnership, firm, or association wherever the context so requires.

> b. Mandatory and Permissive. "Shall" and "will" and "agrees" are mandatory. "May" is permissive.

## 22. Assignment.

This Agreement constitutes a personal contract and Contractor shall not transfer or assign this agreement or any part thereof without written consent of GBG.

## 23. Governing Law.

This Agreement shall be governed by and construed in accordance with the laws of the State of California.

## 24. Successors and Assigns

This Agreement shall be binding on any successors or assignees of GBG.

## 25. Litigation.

Contractor shall not institute administrative, quasi-judicial, or judicial proceedings in the name of GBG without the prior written consent of the Chairman of the Board or President of GBG. Contractor shall not institute administrative, quasi-judicial, or judicial proceedings in Contractor's name for any cause related to or connected with the sale of Securities, or other matters related thereto, or any other business transacted under this Agreement unless such action shall be approved in advance, in writing, by the Chairman of the Board or President of GBG.

If either of the parties hereto is sued or otherwise becomes involved in any administrative, quasi-judicial, or judicial proceeding by reason of an alleged act of Contractor, GBG may defend the suit, action or proceeding, or may require Contractor to defend the same.

If GBG is dissatisfied with the manner in which such defense is conducted, GBG may employ counsel to conduct such defense. All reasonable amounts paid by GBG as a result of such suit, action, or proceeding, including attorneys fees incurred by GBG, shall be paid by Contractor. Without limiting the foregoing, Contractor shall pay all expenses including reasonable attorneys' fees incurred by GBG in any suit, action or proceeding in which GBG establishes a breach of this Agreement by Contractor.

Global Benefits, Inc.
SALES REPRESENTATIVE AGREEMENT

Contractor shall immediately notify GBG of any administrative, quasi-judicial or judicial proceedings naming Contractor or GBG as a party of which Contractor receives notice and shall deliver a copy of any written notices or pleadings served upon Contractor in connection therewith. If both parties to this contract are the subject of a suit, action or proceeding not arising from a breach of this Agreement, then GBG shall have the authority over the conduct of such law suite, provided however, that GBG shall incur the cost of defending such lawsuit. In the event GBG fails to defend Contractor in such a suit, then Contractor shall be free to defend himself, and to make separate settlement in such suit.

**26. Notice:**

Except as otherwise expressly specified herein, all notices hereunder shall be in writing and shall be deemed to have been given or made if delivered personally, or by an overnight delivery service, or within the United States if mailed by certified mail return receipt requested or by registered mail, postage prepaid, to the parties at their respective address set forth herein:

**GBG:**
Global Benefits Group, Inc.
27092 Burbank
Foothill Ranch, CA 92610

**Contractor:**
**Patrick J. Hopkins**
Sunset View Towers, 2230 Roxas Blvd.
Pasay 1300 Metro-Manila
Philippines

or at such address as shall be specified in writing by either of the parties to the other. All notices shall be deemed effective upon date of delivery as documented by signature received at time of personal delivery, by verification of delivery by the overnight delivery service, or by date recorded by the *applicable postal service* as date of receipt for certified or registered mail.

- 16 -

Global Benefits, Inc.
SALES REPRESENTATIVE AGREEMENT

**27. Effective Date/Employment Date**

When executed by the parties below, this Agreement shall be effective as of ___ **2 4** ___ day of *FEB* *2 000* .

For the purpose of determining vesting, the date of employment of Contractor is hereby stipulated as: *MAY* *1988*

Signed this **2 4** day of *FEB -* , *2 000* .

Contractor:

_____
Contractor

_____
Witness

GBG: _____
J. Edward Mandrell, Executive V.P

_____
Witness

- 17 -

67

# EXIBIT A

## First Year

|  | Group (a) | | | Individual (a) | | Securities (b) |
|---|---|---|---|---|---|---|
|  | Health | Life | LTD | Health | VUL |  |
| RVP | 10 | 14 | 14 | 10 | 65 | 70% |
| Regional Manager | 9 | 12 | 12 | 9 | 55 | 65% |
| Benefits Manager | 7 | 10 | 10 | 7 | 42 | 60% |
| Benefits Coordinator | 5 | 7 | 7 | 5 | 35 | 55% |

## 2nd & Subsequent yrs.

|  | Group | | | Individual | | Securities |
|---|---|---|---|---|---|---|
|  | Health | Life | LTD | Health | VUL |  |
| RVP | 10 | 8 | 8 | 10 | —— | 70% |
| Regional Manager | 9 | 7 | 7 | 9 | —— | 65% |
| Benefits Manager | 7 | 5.5 | 5.5 | 7 | —— | 60% |
| Benefits Coordinator | 5 | 4 | 4 | 5 | —— | 55% |

(a) These commissions are a % of premiums received by the company.

(b) These commission are a % of the Gross Dealer Allowance received by the company.

68

Global Benefits, Inc.
SALES REPRESENTATIVE AGREEMENT

## Exhibit B

This exhibit is to contract between Global Benefits Group, Inc. and **Patrick J. Hopkins** dated this day _24_ of _FEB_ , _2000_

Contractors territory shall consist of all the countries in China/Far East as follows:

China
Hong Kong
Indonesia
Japan
Korea
Macau
Pacific Islands
Philippines
Russian Far East
Taiwan

69

# EXHIBIT B

# SALES REPRESENTATIVE AGREEMENT

This Agreement is made between GLOBAL BENEFITS GROUP INC. (hereinafter referred to as GBG), a Delaware corporation with its principal place of business at 27092 Burbank, Foothill Ranch, California, 92610, USA and Celine Zhang an independent Contractor, with a principal place of business at *Rm 801, 2⁹, Lane 31, Lancun Rd, Shanghai China* (hereinafter referred to as Contractor).

**Whereas** GBG is an insurance broker and provider of international financial services representing different insurance and reinsurance companies, and investment companies not restricted to any one country; and

**Whereas** GBG has identified certain specific niches for the marketing of its products and services, and

**Whereas**, GBG wishes to expand its presence in those market niches, and

**Whereas** GBG wishes to retain the services of Contractor for the expansion of its marketing activities, and

**Whereas**, GBG has established certain policies and procedures regarding the manner in which Contractor shall represent GBG,

**NOW THEREFORE**, in consideration of the mutual promises, conditions and covenants as set forth below, the parties agree as follows:

**1. Basic Agreement.**
Contractor agrees to act as a Regional Manager for the sales and marketing of the products and services marketed by GBG.

While this Agreement is in effect, Contractor agrees to use her best efforts to develop the business of GBG, in accordance with the policies and procedures developed by GBG for its business.

For the purposes of this Agreement, the use of "GBG" shall be understood by the parties to include the subsidiaries and affiliates of GBG, including, TieCare International, TieCare LTD, TieCare Financial Services, and any other affiliates or subsidiaries that GBG may have or establish to further its business goals.

**2. Term of Agreement.**
This Agreement shall be effective on July 1 2002, and continue in effect unless terminated as provided for herein.

**3. Termination of Agreement**

This Agreement will terminate upon the occurrence of any of the following events:

    a.  This Agreement may be terminated by GBG for a breach of a material provision of this contract. Such termination shall be effect immediately upon the receipt of written notice, sent via overnight mail service, to Contractor's business address.

    b.  Contract may be terminated by mutual agreement.



EXHIBIT B

70

Global Benefits, Inc.
SALES REPRESENTATIVE AGREEMENT

     c. This Agreement may be terminated by either party giving 30 days written notice to the other, via overnight mail service. In such event the contract will be deemed to me terminated on the 30th day following the date of receipt of such notice by the non-terminating party.

In the event of termination in accordance with this paragraph, all obligations of the parties to the other, excluding those obligations which by their nature survive termination, as more specifically described in Sections 9, 14, and 15 of this Agreement, shall be null and void.

**4.  Responsibilities of Contractor.**

Contractor agrees to act as a Regional Manager of GBG for the sale of the products and services offered by GBG while this contract is in effect. Such representation shall consist of Contractor's efforts to increase the sales volume of GBG's products and services, and to provide such administrative and client service as GBG may require by its policies and procedures.

Contractor recognizes that GBG may require the maintenance of certain records and the filing of certain reports to GBG, and the reporting of Contractor's activities on behalf of GBG, and Contractor agrees to maintain such records and provide such reports in accordance with the procedures GBG sets up for such reporting.

Contractor shall be solely responsible for all her business expenses, including but not limited to travel, entertainment, office rent, signs, telephone, education, dues, subscriptions, licenses, etc., and shall receive no remuneration or reimbursement of any nature whatsoever other than the commissions and renewal fees described on Exhibit A.

Contractor may, at contractor's own expense, use employees or subcontractors, as Contractor deems necessary to perform the services required of contractor by this agreement. GBG may not control, direct, or supervise contractor's employees or subcontractors in the performance of those services. Actions of the employees or subcontractors of Contractor are the responsibilities of the Contractor, who must ensure that such actions comply with the requirements of this contract. Contractor is also responsible to assure that all subcontractors or employees are in full compliance with all applicable licensing and regulatory requriements. Failure of an employee or subcontractor to comply with provisions of this contract is considered breach of this contract by the contractor.

If, pursuant to this paragraph, Contractor utilizes a sub contractor or employee for the purpose of assisting Contractor in the sales and marketing of products or services offered by GBG and Contractor under this Agreement, and provided that said employee or contractor is a licensed representative of GBG, (or whose duties require such a license), then Contractor acknowledges that Contractor will employ said sub contractor in accordance with the following provisions;

     a)  Sub contractor shall be paid in accordance with the GBG's then existing commissions schedule for the position filled by sub contractor, and shall have executed a then current copy of GBG's standard representative's contract.

     b)  Contractor shall have received written approval from GBG regarding the employment of said sub contractor, such approval to include a statement of all compensation to be paid sub contractor;

- 2 -

## Global Benefits, Inc.
## SALES REPRESENTATIVE AGREEMENT

c) It shall be the responsibility of GBG to compute and pay sub contractors in accordance with the agreed upon compensation schedule for each individual sub contractor. Contractor may not pay such sub contractor(s) directly without the express written consent of the president of GBG or her designee. This provision shall also apply to the payment of any vested commission due sub Contractor upon the termination of a sub contractor's Agreement with GBG.

## 5. Responsibilities of GBG

GBG agrees to provide Contractor with a list of products and services offered by GBG, with such information as may be necessary for Contractor to offer such products and services to potential clients.

GBG further agrees to process any and all business submitted by Contractor to GBG in a timely manner, and to provide for the timely payment of commissions and other payments, if any, to Contractor, as required by Paragraph 9 this Agreement.

GBG also agrees to provide marketing and administrative support to Contractor, in a manner and amount as shall be determined by GBG.

GBG further agrees to use its best efforts to maintain a portfolio of competitive products for sale by Contractor in GBG markets.

## 6. Method of Performing Services/Time Devoted to Work

Contractor will determine the method, details, and means of performing the above-described services in the best interests of the GBG, and will devote such time to representing GBG as Contractor, in her sole discretion, shall decide.

Nothing in this paragraph shall be construed to diminish Contractor's obligations to maintain such records and file such reports as GBG may require pursuant to paragraph 5 of this Agreement.

## 7. Status of Contractor.

Contractor enters into this agreement, and will remain throughout the term of the agreement, as an independent contractor. Contractor agrees that in discharging her responsibilities under this Agreement, he is not operating as an employee, partner, agent, or principal of GBG. Contractor agrees he is not entitled to the rights or benefits afforded GBG's employees, including disability or unemployment insurance, workers'
compensation, medical insurance, sick leave, or any other employment benefit, and Contractor is responsible for providing disability, employment, and other insurance, workers' compensation, training. permits, and licenses for himself and for her employees and subcontractors, at her own expenses.

GBG may from time to time provide the administrative facilities for group benefits for the contractors on a voluntary basis for the benefit of the contractors having the advantage of group purchases.

Contractor is responsible for paying her own taxes, including but not limited to US Federal Insurance Contributions, US Social Security, US Federal and state income taxes, any applicable US and state sales taxes, and any foreign taxes.

## 8. Exclusive Relationship

- 3 -

72

## Global Benefits, Inc.
## SALES REPRESENTATIVE AGREEMENT

Contractor recognizes the unique nature of GBG's business, and acknowledges that the individual contacts and marketing concepts of GBG are proprietary to GBG, and essential to the continued success of GBG. For that reason, while this agreement is in effect, and in the event of termination, for the time periods specified in paragraph 11 below, Contractor agrees that he shall not represent in any way, directly or indirectly, including, but not limited to, as an employee, consultant, representative, owner, partner, stockholder, or otherwise, any other individual, partnership, insurance company, investment firm, broker, dealer, or similar entity, that is engaged in any business that is competitive with the business of GBG. This prohibition shall not extend to Contractor's ownership, for investment purposes, of stock in a publicly traded company or mutual fund.

In the event that Contractor wishes to represent a firm or individual that Contractor believes is not in competition with GBG, then Contractor shall require written permission from GBG to represent such individual or entity. Such request shall be in writing and shall contain the details of the products or services that Contractor wishes to represent. GBG shall respond to such written request within 30 days, and shall have the right to deny such right to Contractor in its sole discretion.

### 9. Confidential Information-Non-Disclosure

During and after the term of this Agreement, Contractor agrees not to communicate, divulge or use for the benefit of Contractor, or any other person or entity, the business secrets or methods, business policies or forms, reports, lists or names of customers, or of former and/or prospective customers of GBG, or any other confidential information of GBG of any type or description, except as expressly permitted herein. Contractor agrees that Contractor will not take, carry away or use in any manner any records of GBG other than for the benefit of GBG. Any written, printed, graphic, or electronically or magnetically recorded information furnished by customer for Contractor's use in obtaining, servicing and maintaining GBG clients are the sole property of GBG. This proprietary information includes, but is not limited to, customer requirements, customer lists, marketing information, and information concerning customer's employees, products, services, prices, operations and subsidiaries. Contractor will keep this confidential information in the strictest confidence, and will not disclose it by any means to any person except with GBG's approval and only to the extent necessary to perform the services under this agreement. This prohibition also applies to Contractor's employees, agents, and subcontractors. On termination of this agreement, Contractor will return any confidential information in her possession to GBG.

Contractor will have access only to GBG System Information and Account Information which pertains to the accounts of her or her clients, and not to general GBG information and Account Information with respect to any other policyholders of GBG. Contractor understands and agrees that the GBG System Information and Account Information is provided to him/her exclusively for use in connection with the business and affairs of GBG, and agrees to treat the GBG System Information and Account Information as confidential, to hold it in trust and confidence for the sole purpose of servicing the client to whom any particular GBG System Information and Account Information relates, and not to disclose or use it for any purpose unrelated to servicing a particular GBG client.

Contractor hereby expressly agrees not to utilize the GBG System Information or Account Information in connection with advertising or sales material of any kind, and not to disclose it to anyone other than the GBG client to whom the particular GBG System Information or Account Information relates, including any potential sales prospects. Further, Contractor agrees to take such steps as GBG shall reasonably request to aid it in protecting the confidential and proprietary natures of the GBG System Information and Account Information.

Contractor agrees not to utilize any written material which has been produced from the GBG System Information or Account Information with a GBG without first obtaining prior written approval of the form of such material from the Compliance Officer of GBG. In order to facilitate compliance with this Section, once the form of such material has been approved in writing by the President of GBG or her designee,

- 4 -

73

## Global Benefits, Inc.
## SALES REPRESENTATIVE AGREEMENT

such statement or other material may be used with various clients without the need to submit each individual correspondence or other material for written approval.

Contractor further agrees to fully indemnify and hold GBG harmless with respect to any and all claims or losses which may result from Contractor's actions in the acquisition or utilization of the GBG System Information or Account Information.

Contractor agrees to discontinue electronic access to the GBG System and to all Account Information pursuant to this Agreement, and to destroy or return to the GBG all copies, reproductions, notes, papers or other materials either provided by the GBG or created by Contractor from the GBG System or the Account Information within 14 calendar days, or as soon as practicable, of any request made by the GBG during Contractor's tenure and immediately upon termination of Contractor's tenure from GBG for any reason.

This paragraph shall remain in effect even after Contractor's status with GBG is terminated by either Contractor or the GBG for any reason, until such time as a prior written release of this Agreement is signed by the GBG. In the event that Contractor breaches any of the provisions of this Agreement, Contractor agrees that the GBG shall be entitled to an injunction restraining Contractor or her or her employees, agents or representatives from disclosing the GBG System Information or the Account Information,, or from rendering any services to any person, corporation, association or other entity to whom such GBG System Information or the Account Information has been disclosed. This does not prohibit the GBG from pursuing any other remedies available to it for such breach or threatened breach, including the recovery of damages. Further, if GBG employs an attorney to assist it in protecting its rights pursuant to this Agreement, Contractor agrees to pay the GBG's reasonable attorney's fees, legal expense, and other expenses should judgement against the contractor be entered in a court of competent jurisdiction or in the appropriate administrative forum. Conversely, should the contractor not be found to have breached provisions of this contract TFS will be liable to pay contractor's reasonable attorney's fees, legal expense and other expenses.

### 10. Territory
Contractor shall represent GBG in the territory described in Exhibit B, which territory may be modified from time to time by GBG. Any such modification, once received in writing by Contractor, shall become an integral part of this Agreement.

Contractor acknowledges that this grant of territory by GBG is not exclusive, and is not intended to preclude GBG from entering into brokerage agreements, or other distribution agreements, with other individuals or entities for the representation of GBG in a portion of the territory outlined in Exhibit B. Such appointment, if any, by GBG, shall not require any payment of commissions, overrides, or other payments to Contractor on business produced by such additional distribution channels.

### 11. Compensation

Contractor's sole compensation under this Agreement shall be commissions and fees according to the schedules set forth in Exhibit A which is attached hereto and incorporated herein by reference. Commissions and fees specified in Exhibit A shall be earned by Contractor only upon GBG having earned its commissions either by the payment of premium payments by the client, or the receipt of commissions payments by a product provider.

All commissions and fees earned by Contractor shall be paid to contractor by the 15th of each month, for all commissions and fees earned in the preceding month.

- 5 -

74

## Global Benefits, Inc.
### SALES REPRESENTATIVE AGREEMENT

GBG is hereby authorized by Contractor to deduct from commissions due the amount of any commission paid to Contractor in connection with any payment or amount that GBG refunds to Contractor's clients. In the event that Contractor receives advances or draws against commissions earned pursuant to this Agreement, such advances shall be the subject of a separate written agreement between the parties. In the absence of such written agreement pertaining to amounts advanced, if any, then GBG shall have the right to credit any commissions earned pursuant to this Agreement against such advances or draws.

If a group or individual client of Contractor requests in writing the transfer of an account from Contractor to another GBG contractor, Contractor will retain all commission amounts previously paid, will receive full commissions due to the end of the current quarter, and will receive 50 percent commission thereafter, until the termination of this Agreement.

Contractor shall receive no fringe benefits under this Agreement, including but not limited to insurance benefits, disability income, paid vacation, expense reimbursement or retirement benefits unless otherwise provided for in this Agreement.

#### 12. Vested commissions

In the event this Agreement is terminated, by either party, for any reason, and provided such termination takes place more than 24 months from the date of execution of this Agreement, then, in recognition of unique nature of GBG's business, and in consideration for Contractor's compliance with the non-compete provisions of paragraph 15, Contractor shall receive vested commissions as follows: (Contractor shall not be entitled to vested commissions until this Agreement has been in effect for 24 months.)

For every two calendar quarters that this Agreement was in effect, and provided that Contractor is in compliance with the non-compete provisions of Section 15 of this Agreement, Contractor shall receive one calendar quarter of vested commissions, up to a maximum of 20 quarters of vesting. For the products and services described below, vested commissions shall be equal to 50% of the commissions Contractor would have been entitled to while this Agreement was in effect.

Vested commissions earned pursuant to this paragraph shall be earned by Contractor only upon GBG having earned its commissions, either by the payment of premium payments by the client, or the receipt of commissions payments by a product provider.

    a) For group health insurance, group life insurance, and group LTD policies placed by Contractor prior to the termination of this Agreement, Contractor shall be vested on the amount of premium received for the most recent renewal period before termination of the contract. (Contractor is not vested on any commissions earned by GBG as a result of an increase in the premium paid by the client whether such increase is the result of an increase in coverage or an increase in premium rates.)

    b) For investment plans in effect upon the termination of this Agreement, Contractor's vesting shall be based on the clients, and not the amount of money on deposit, or the amount of money contributed at the time of such termination. Commissions on such clients shall be calculated as if Contractor was still employed by GBG, and the appropriate vested commissions shall be paid on the full account value, and the full level of contribution, including increases and growth that occurs after termination.

The parties acknowledge that the vested commissions earned by Contractor on investment plans described in b) above shall apply to trail commissions or asset based commissions as well as future contributions.

- 6 -

Global Benefits, Inc.
## SALES REPRESENTATIVE AGREEMENT

> c) Vested commissions include commissions that constitute overrides on sub-contractors or sub-agents of Contractor.
>
> d) For fees earned on products such as Tax Preparation, contractor shall not have any vested commission.
>
> f) On individual health insurance and life insurance clients enrolled by Contractor or legally assigned to Contractor prior to the terminations of this Agreement, Contractor shall be vested in the annual amount of premium such clients paid for the most recent renewal period while the Agreement was in effect. (Contractor is not entitled to any commissions on any increases in the amount of premium paid by such clients subsequent to the termination of this Agreement.)

It is expressly acknowledged that for each individual or group client of GBG, only one Contractor, (or previous Contractor), can be vested at a time. Therefore, in the event that GBG assigns or transfers existing
business to Contractor, or assents to such transfer or assignment, then on such business assigned or transferred, Contractor's vesting will begin after the payment of all previously existing vesting.

Upon the death of Contractor, vested commissions still due, if any, will be paid to the legal representative of Contractor's Estate, or the person that the legal representative designates in writing. In no event will GBG pay vested or accrued commissions to more
than one person.

In the event that upon the termination of this Agreement there is money owed by Contractor to GBG, whether due to advances, draws, loans, or any other reason, then GBG shall have the right to withhold any vested commissions due until such money owned GBG has been repaid by the application of such vested commissions.

The provisions described above regarding vested commissions shall also apply in the event any portion of Contractor's territory is re- assigned by GBG.

### 13. Indemnification.

Contractor will indemnify and hold harmless GBG, its affiliates, any Partnership of which GBG or an affiliate is a general or limited partner, and their respective employees, agents, officers, directors, affiliates and successors, from and against any and all loss, cost, claims, or damage, including attorney's fees arising out of Contractor's breach of this Agreement.

### 14. Provisions After Termination

Upon termination of this Agreement in accordance with paragraph 3 above, the parties agree as follows:
> a) Promptly at the end of the 30 day notice period, GBG shall pay Contractor any commissions due and owing to Contractor as of the termination date of the Agreement.
>
> b) Within 30 days of the termination of this Agreement, Contractor shall return to GBG any training manual, procedures manuals, clients files, proprietary data and databases, and any other material related to the discharge of Contractor's responsibilities under this Agreement. Provided that there is no confidential or proprietary information involved, Contractor may retain for her own use any personal work product produced by Contractor during the period that this Agreement was in effect.
>
> c) Contractor further acknowledges and agrees that all supplies, including but not limited to prospectuses, memoranda, visual aids, specimen plan forms, manuals, statistical and sales

- 7 -

76

## Global Benefits, Inc.
## SALES REPRESENTATIVE AGREEMENT

training and/or recruitment materials furnished by GBG to Contractor, are and shall be the property of GBG and shall also be returned promptly to GBG upon demand.

d) Contractor shall remove from her office facilities, business cards, letterheads, and all other advertising or promotional material, any reference to GBG, or its affiliates or subsidiaries.

e) Contractor shall continue to abide by the provisions of Sections 8, 9, 10, and 11, of this Agreement, as well as the non-compete provisions of Section 15.

f) Subsequent to such termination GBG shall pay vested commissions due Contractor, if any, within 15 days of the end of each month, except that in the event such vested commissions are less than $1,000 per month, GBG reserves the right to pay such vested commissions quarterly, such payment being due within 15 days of the end of each calendar quarter.

### 15. Non- Competition

Contractor acknowledges that the marketing of GBG's products and services involves:
   a) knowledge of the key individuals in the market niches that GBG pursues;
   b) relationships with specified product providers, and knowledge of specific product provisions and features;
   c) critical relationships with GBG clients, both groups and individuals;
   d) relationships with professional organizations active in the market segments important to GBG;
   e) business relationships with third party organizations who may sub contract, sponsor, recommend or otherwise engage in marketing activities with GBG;
   f) the development and maintenance of a high level of confidence and credibility in the international financial services marketplace, which is predicated on the proprietary knowledge, data bases, products, and expertise of GBG,
   g) a substantial investment of money and management effort by GBG in the development of GBG's business niche, the training and support of Contractor, and the promotion of Contractor's business;

In acknowledgement of the importance of the above factors in the business activities of GBG, Contractor agrees that upon the termination of this contract, by either party for any reason, Contractor shall be bound by the following restrictions regarding competition with GBG:

   a) For a period of one year from the date of the termination of this Agreement, Contractor shall not:

      1) sell or offer for sale, directly or indirectly, any financial services product or service to Americans living abroad, or other expatriates working in countries other than their native country, if that product or service is substantially similar to a product or service offered by GBG prior to such termination;
      2) represent to Americans living abroad, or to other expatriates living in countries other than their native country, directly or indirectly, any of the insurance underwriters or investment firms represented by GBG or its affiliates, at any time during the 12 months prior to the termination of this Agreement.

   b) From the date of the termination of this Agreement until the expiration of the period for which Contractor is to receive vested commissions under this Agreement, Contractor agrees not to:

- 8 -

77

Global Benefits, Inc.
SALES REPRESENTATIVE AGREEMENT

1) enter into competition, directly or indirectly, with GBG, in any portion of the territory assigned to Contractor at the time of the termination of this Agreement.

2) replace any insurance contract, investment program, or financial services product or service, in place

with a GBG group or individual client at the time of the termination of this Agreement, with any other insurance,

investment, or financial services product.

In the event of the non-compliance of contractor with any aspect of this agreement not to compete, GBG shall be entitled to the following remedies;

a) The forfeiture by Contractor of the right to any vested commissions described in paragraph 11 above.
b) Any commissions or other compensation earned by Contractor in violation of this non-compete provisions;
c) Any other remedies available to it by the operation of law, including but not limited to the granting of an injunction prohibiting Contractor from carrying our any activities in violation of this paragraph.

In the event that Contractor disputes GBG's conclusion that Contractor is in violation of this non-compete provision, then Contractor may submit the matter to binding arbitration, utilizing the procedures and services of the American Arbitration Association. In such event, Contractor shall provide written notice to GBG of Contractor's intention to request such arbitration, and such request shall include a description of Contractor's reason for disputing GBG's position. If GBG has not responded to Contractor in a manner satisfactory to Contractor within 30 days of receiving such notice from Contractor, the matter shall be referred to the American Arbitration Association, and the parties agree to be bound by the decisions of said arbitrator.

It is expressly understood that such arbitration shall be limited to a finding of whether Contractors is in violation of the non-compete provision of this agreement, and the arbitrator shall have no jurisdiction to review the validity or reasonableness of said provision, or of any other provisions of this Agreement, or to award or assess any damages or monetary awards to either party.

Such arbitration shall take place at the facility nearest to the administrative offices of GBG, and each party shall be responsible for their own costs in preparing for and attending such arbitration. The cost of such arbitration that is assessed by the American Arbitration Association shall be split equally by the parties.

In the event Contractor prevails in the Arbitration, GBG agrees to pay Contractor, all accrued and unpaid commissions within 30 days of the receipt by GBG of Arbitrator's decision,

16.  Entire Agreement.

This Agreement and the Exhibits attached hereto constitute the entire Agreement between the parties with respect to the subject matter hereof and supersede any prior written or oral representations relating thereto.

The parties acknowledge that Contractor may be required to enter into similar Agreements with affiliates or subsidiaries of GBG, which Agreements may cover matters similar to those dealt with herein. In the event such additional contracts are executed by the parties, nothing therein shall be construed to alter any provision of this Agreement.

- 9 -

## Global Benefits, Inc.
## SALES REPRESENTATIVE AGREEMENT

### 17. Modification of Agreement.

GBG may from time to time modify this Agreement by giving written notice to Contractor of such modification. Such modifications shall be effective fifteen (15) days after date of proof of receipt by the contractor, and shall apply only to the activities of Contractor subsequent to such modification. In no event shall such modification reduce or eliminate vested rights already earned prior to such modification.

Any modification by GBG to the commission schedule annexed to this Agreement as Exhibit A shall be sent to Contractor by written notification, via overnight mail delivery. Any such modification shall take place 15 days from the date of such announcement, shall become apart of this Agreement, and such commission modification shall take effect only with respect to business submitted after the effective date of such notification.

### 18. No Waiver.

No waiver, express or implied, by GBG of a default by Contractor under this Agreement, shall constitute a waiver of any subsequent default; and following a waiver, express or implied, a demand for strict compliance thereafter need not be served on Contractor.

### 19. Partial Invalidity.

If any term, covenant, condition or provision of this Agreement is held by a court of competent jurisdiction to be invalid, void or unenforceable, the remainder of the provisions shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

### 20. Headings.

The paragraph headings contained in this Agreement are inserted for purposes of convenience of reference only and shall not affect the meaning or interpretation of this Agreement.

### 21. Interpretation and Definitions.

Unless otherwise provided in this Agreement, or unless the context otherwise requires, the following definitions and rules of construction shall apply herein:

a. Number and Gender. In this Agreement the neuter and masculine gender include the feminine and masculine and the singular number includes the plural, and the word "person" includes corporation, partnership, firm, or association wherever the context so requires.

b. Mandatory and Permissive. "Shall" and "will" and "agrees" are mandatory. "May" is permissive.

### 22. Assignment.

This Agreement constitutes a personal contract and Contractor shall not transfer or assign this agreement or any part thereof without written consent of GBG.

### 23. Governing Law.

Global Benefits, Inc.
SALES REPRESENTATIVE AGREEMENT

This Agreement shall be governed by and construed in accordance with the laws of the State of California.

### 24. Successors and Assigns

This Agreement shall be binding on any successors or assignees of GBG.

### 25. Litigation.

Contractor shall not institute administrative, quasi-judicial, or judicial proceedings in the name of GBG without the prior written consent of the Chairman of the Board or President of GBG. Contractor shall not institute administrative, quasi-judicial, or judicial proceedings in Contractor's name for any cause related to or connected with
the sale of Securities, or other matters related thereto, or any other business transacted under this Agreement unless such action shall be approved in advance, in writing, by the Chairman of the Board or President of GBG.

If either of the parties hereto is sued or otherwise becomes involved in any administrative, quasi-judicial, or judicial proceeding by reason of an alleged act of Contractor, GBG may defend the suit, action or proceeding, or may require Contractor to defend the same.

If GBG is dissatisfied with the manner in which such defense is conducted, GBG may employ counsel to conduct such defense. All reasonable amounts paid by GBG as a result of such suit, action, or proceeding, including attorneys fees incurred by GBG, shall be paid by Contractor. Without limiting the foregoing, Contractor shall pay all expenses including reasonable attorneys' fees incurred by GBG in any suit, action or proceeding in which GBG establishes a breach of this Agreement by Contractor.

Contractor shall immediately notify GBG of any administrative, quasi-judicial or judicial proceedings naming Contractor or GBG as a party of which Contractor receives notice and shall deliver a copy of any written notices or pleadings served upon Contractor in connection therewith. If both parties to this contract are the subject of a suit, action or proceeding not arising from a breach of this Agreement, then GBG shall have the authority over the conduct of such law suite, provided however, that GBg shall incur the cost of defending such lawsuit. In the event GBG fails to defend Contractor in such a suit, then Contractor shall be free to defend himself, and to make separate settlement in such suit.

### 26. Notice.

Except as otherwise expressly specified herein, all notices hereunder shall be in writing and shall be deemed to have been given or made if delivered personally, or by an overnight delivery service, or within the United States if mailed by certified mail return receipt requested or by registered mail, postage prepaid, to the parties at their respective address set forth herein:

GBG:
Global Benefits Group, Inc.
27092 Burbank
Foothill Ranch, CA 92610

Contractor: *Celine Zhang*
*Rm801, 2#, Lane 31, Lancun Rd*
*Pudong Shanghai 200127*
*China*

or at such address as shall be specified in writing by either of the parties to the other. All notices shall be deemed effective upon date of delivery as documented by signature received at time of personal delivery, by verification of delivery by the overnight delivery service, or by date recorded by the *applicable postal service* as date of receipt for certified or registered mail.

Global Benefits, Inc.
SALES REPRESENTATIVE AGREEMENT

**27. Direct Relationship**

The parties acknowledge that Contractor shall report directly to the Company's Regional Vice President
for the territory in which Contractor is active on behalf of the Company. However, the Company
expressly acknowledges that Contractor's primary relationship is with the Company, and that Contractor's
relationship with the Company is independent of any reporting relationship established by this
Agreement, or by the Company subsequent to this Agreement.

No action by the Regional Vice President to which Contractor reports shall cause Contractor to lose any of
the compensation, vesting, or other rights due Contractor under this Agreement.

**28.      Effective Date/Employment Date**

When executed by the parties below, this Agreement shall be effective as of ___/ JAN. 2004___

- 12 -

81

Global Benefits, Inc.
SALES REPRESENTATIVE AGREEMENT

**Signature Page**

**Sales Representative Agreement**

**The foregoing Agreement between Celine Zhang as Contractor, and Global Benefits Group
("GBG") and its affiliates, is hereby duly executed by the parties:**

)

**Contractor:**

_____ (Celine Zhang)    _____
Celine Zhang,  Regional Manager               Witness

**GBG:**

_____               _____
Andrew Thorburn, President                   Witness

)

- 13 -

# EXIBIT A

## First Year

|  | Group (a) | | | Individual (a) | | Securities (b) |
|---|---|---|---|---|---|---|
|  | Health | Life | LTD | Health | VUL |  |
| RVP | 10 | 14 | 14 | 10 | 65 | 70% |
| Regional Manager | 9 | 12 | 12 | 9 | 55 | 65% |
| Benefits Manager | 7 | 10 | 10 | 7 | 42 | 60% |
| Benefits Coordinator | 5 | 7 | 7 | 5 | 35 | 55% |

## 2nd & Subsequent yrs.

|  | Group | | | Individual | | Securities |
|---|---|---|---|---|---|---|
|  | Health | Life | LTD | Health | VUL |  |
| RVP | 10 | 8 | 8 | 10 | ------ | 70% |
| Regional Manager | 9 | 7 | 7 | 9 | ------ | 65% |
| Benefits Manager | 7 | 5.5 | 5.5 | 7 | ------ | 60% |
| Benefits Coordinator | 5 | 4 | 4 | 5 | ------ | 55% |

(a) These commissions are a % of premiums received by the company.

(b) These commission are a % of the Gross Dealer Allowance received by the company.

Global Benefits, Inc.
SALES REPRESENTATIVE AGREEMENT

## **Exhibit B**

This exhibit is to contract between Global Benefits Group, Inc. and **Celine Zhang** dated
this day ___1___ of __J A N.___, _2 0 0 4__ .

Contractors territory shall consist of all the countries as follows:

China

# EXHIBIT C

## <u>Consulting Agreement</u>

By this an unconditional irrevocable Agreement between:

Ray Khadivi of 5 Broadfields Avenue, Winchmore Hill, London, U.K.(Khadivi), and

Global Benefits Group, Inc. (GBG) and Andrew Thorburn of 4 Mountain Laurel, Trabuco Canyon, CA, (Thorburn), the parties agree as follows:

1.      The purpose of this Agreement is to outline terms and conditions by which Khadivi will assist GBG with the set up, implementation and initial operations of its European affiliate, operating under the name Global Benefits Europe, (GBE), or similar name.

In pursing this objective the parties agree to work together to assist GBG in the following projects:

      a) the launch of GBE as an affiliate of GBG;
      b) employment of John White, Paul Horden and Rob Coss as employees of GBG/GBE;
      c) assignment of all current GBG business now placed through PWS to GBE, such placement to be on a net basis; that is, with no placement or broker fees paid to GBE; (China health insurance business will continue to be placed by PWS for a fee of 1% of net premium paid by GBG to PWS.)
      d) renewal of the existing GBG binders and reinsurance treaties under the terms outlined above, and their reassignment to GBE.
      e) retention by GBG of the brokerage and placement fees formerly due to PWS, effective April 1st 2008;
      f) modification of the health insurance binders such that the profit share to GBG shall be 50% of all underwriter profits after a 90% loss ratio to underwriting premium is achieved;
      g) renewal of all existing GBG business under such terms within its binding authority, as GBG may determine applicable to each case;
      h) Any other activity necessary to the proper launch and operation of the European affiliate of GBG.

2.      The parties agree to maintain a cooperative relationship with respect to future business activities and to refrain from any disparaging or derogatory statements regarding the other; this agreement shall extend to the employees, associates, and affiliates of the parties.

The parties further agree that the details of their business cooperation prior to, during and subsequent to the date of this agreement shall be confidential, and neither party shall share any such details with any individual or entity.



EXHIBIT C

3.      In consideration of the cooperation under this Agreement, GBG shall pay Khadivi a non-cancelable, irrevocable and unconditional consulting fee equal to $600,000 to be paid as follows:  $200,000 for the first 12 months after execution of this Agreement, and $100,000 annually for each of the next four years thereafter; all fees to be paid monthly beginning April 30, 2008, and continuing for 59 months thereafter.  Other than compliance with the provisions of this Agreement, this fee is not contingent on any specific performance by Khadivi, and the obligation to pay this fee shall be binding upon the successors and assigns of GBG.

Within 90 days of the sale of a majority interest in GBG to any party unaffiliated with Thorburn, the balance of the consulting fees due under this Agreement shall be paid to Khadivi in a lump sum.

4.      The parties acknowledge that there are no other written or oral agreements between the parties and any such prior agreements are hereby rendered null and void, except for the 8% stockholding by Khadivi in GBG in respect of which they will reach an alternative agreement.

5.      In recognition of Khadivi's stockholding in GBG, Thorburn shall pay Khadivi further fees equating to any income to GBG or GBE accounts as a result of certain TPA agreements or profit commissions previously negotiated by Khadivi on behalf of GBG.

6.      The parties shall use their best efforts to ensure that the effective date of the provisions of Paragraph 1 above shall be April 1st, 2008.

This agreement is governed by English law, and enforceable in both England and the United States of America.


Signed:


_____  April 15, 2008
Andrew Thorburn


_____  April 16, 2008
Ray Khadivi                    (date)

# EXHIBIT D

 ## GLOBAL BENEFITS GROUP 

### *Insurance Without Borders*ᶜ

26000 Towne Centre Drive, Suite 100, Foothill Ranch, CA 92610 USA

Phone: +1.949.470.2100  Fax: +1.949.470.2110  E-mail: info@gbgi.net

June 15, 2009

**Via E-mail and Courier**

Mr. Patrick Hopkins
German Center, Room 623
Tower 2, 88 Keyuan Road
Zhangjiang Hi-Tech Park, Shanghai 201203
P.R. China

Attention: Mr. Patrick Hopkins

This is notification of the immediate cancellation of your Sales Representative
Agreement (the "Agreement") effective February 24, 2000 pursuant to which you were
retained as Regional Vice President of Global Benefits Group, TieCare International, and
any and all related or affiliated entities, herein collectively GBG, under the provisions of
Section 3 a. of that Agreement.

Based on your gross and intentional violation of Sections 8 and 9 of the Agreement,
effective immediately - upon the receipt of this notification you shall:

  (I) Cease and desist from using the name Global Benefits Group, GBG, TieCare
International, and any variations or modification of these and all other names,
servicemarks, trademarks or trade dress of GBG.

  (II) Immediately modify or destroy all sales or advertising material, brochures,
and other communications, including web sites and e-mail addresses, that state or imply
any association by you, your associates or employees, with GBG.

  (III) Notify your employees, agents and associates to cease and desist from any
communication with clients, insurance companies or other entities, that state or imply any
association with GBG.

  (IV) In accordance with Sections 9 and 14 of the Agreement, immediately return
to GBG all confidential data, including procedure manuals, customer lists, premium
charts, and all other data relating to the GBG business.


EXHIBIT D

87

(V) Immediately discontinue electronic access to the GBG Information and Computer Systems and to all Account Information, and destroy all copies, reproductions, notes, papers or other materials provided by GBG or created by you from the GBG Information and Computer System or the Account Information. Furthermore, in addition to your on going confidentiality and non compete obligations set forth, in accordance with Section 9 of the Agreement neither you nor your employees, agents or representatives shall disclose the GBG Information and Computer System or Account Information or render services to any person, corporation, association or other entity to whom such GBG Information and Computer System or Account Information has been disclosed.

In addition, under the Terms of Section 13 of the Agreement, demand is hereby made for immediate payment to GBG in the amount of $ 2,250,000 (USD), as indemnification for damages suffered by GBG by violation of your agreement and fiduciary responsibility. The total amount of indemnification due GBG may increase as a result of future actions on your part, or by discovery of further damage resulting from actions already taken.

This termination is effective immediately, and should not be construed as representing the full extent of our rights or the actions and remedies the Company will pursue in this matter, all of which are reserved.

Be further advised that you are expected to abide by all the post-termination provisions and restrictions in the Agreement, and, if necessary, the Company will take additional actions to enforce such provisions.

Andrew Thorburn
CEO, Global Benefits Group/Tiecare International

**88**

 

# GLOBAL BENEFITS GROUP

### *Insurance Without Borders®*

28000 Towne Centre Drive, Suite 100, Foothill Ranch, CA 92610 USA

Phone: +1.949.470.2100 Fax: +1.949.470.2110 E-mail: info@gbgi.net

June 15, 2009

**Via E-mail and Courier**

Ms. Celine Zhang
German Center, Room 623
Tower 2, 88 Keyuan Road
Zhangjiang Hi-Tech Park, Shanghai 201203
P.R. China

Attention: Ms. Celine Zhang

This is notification of the immediate cancellation of your Sales Representative Agreement (the "Agreement") effective January 1, 2004 pursuant to which you were retained as Regional Manager of Global Benefits Group, TieCare International, and any and all related or affiliated entities, herein collectively GBG, under the provisions of Section 3 a. of that Agreement.

Based on your gross and intentional violation of Sections 8 and 9 of the Agreement, effective immediately - upon the receipt of this notification you shall:

(I) Cease and desist from using the name Global Benefits Group, GBG, TieCare International, and any variations or modification of these and all other names, servicemarks, trademarks or trade dress of GBG.

(II) Immediately modify or destroy all sales or advertising material, brochures, and other communications, including web sites and e-mail addresses, that state or imply any association by you, your associates or employees, with GBG.

(III) Notify your employees, agents and associates to cease and desist from any communication with clients, insurance companies or other entities, that state or imply any association with GBG.

(IV) In accordance with Sections 9 and 14 of the Agreement, immediately return to GBG all confidential data, including procedure manuals, customer lists, premium charts, and all other data relating to the GBG business.

**89**

(V) Immediately discontinue electronic access to the GBG Information and Computer Systems and to all Account Information, and destroy all copies, reproductions, notes, papers or other materials provided by GBG or created by you from the GBG Information and Computer System or the Account Information. Furthermore, in addition to your on going confidentiality and non compete obligations set forth, in accordance with Section 9 of the Agreement neither you nor your employees, agents or representatives shall disclose the GBG Information and Computer System or Account Information or render services to any person, corporation, association or other entity to whom such GBG Information and Computer System or Account Information has been disclosed.

In addition, under the Terms of Section 13 of the Agreement, demand is hereby made for immediate payment to GBG in the amount of $ 2,250,000 (USD), as indemnification for damages suffered by GBG by violation of your agreement and fiduciary responsibility. The total amount of indemnification due GBG may increase as a result of future actions on your part, or by discovery of further damage resulting from actions already taken.

This termination is effective immediately, and should not be construed as representing the full extent of our rights or the actions and remedies the Company will pursue in this matter, all of which are reserved.

Be further advised that you are expected to abide by all the post-termination provisions and restrictions in the Agreement, and, if necessary, the Company will take additional actions to enforce such provisions.

Andrew Thorburn
CEO, Global Benefits Group/Tiecare International